742 So.2d 615 (1999)
STATE of Louisiana
v.
Warren CREECY.
No. 98-KA-1472.
Court of Appeal of Louisiana, Fourth Circuit.
July 14, 1999.
*616 Harry F. Connick, District Attorney of Orleans Parish, Holli Herrle-Castillo, Assistant District Attorney of Orleans Parish, New Orleans, Louisiana, Counsel for State of Louisiana/Appellee.
Christopher Albert Aberle, Lousiana Appellate Project, Mandeville, Louisiana, Counsel for Defendant/Appellant.
Court composed of Judge WILLIAM H. BYRNES III, Judge MOON LANDRIEU, Judge MICHAEL E. KIRBY.
LANDRIEU, Judge.
The defendant, Warren Creecy, was charged by bill of information with possession of marijuana with intent to distribute a violation of La.Rev.Stat. 40:966(A)(2). Following a hearing on the defendant's motion to suppress the evidence, the district court found probable cause to arrest and denied the motion. The defendant then withdrew his former plea of not guilty and entered a plea of guilty as charged pursuant to State v. Crosby, 338 So.2d 584 (La.1976). Thereafter, the district court sentenced the defendant to serve five years at hard labor with credit for time served, suspended the sentence, and placed him on active probation for five years with special conditions. The district court denied his motion to reconsider the sentence. For the reasons set forth below, we reverse the ruling of the district court denying the motion to suppress the evidence.

Facts
At the hearing on the motion to suppress the evidence, defense counsel submitted the issue of probable cause to arrest the defendant on the information contained in the search warrant issued on October 25, 1997, for the premises, person, and vehicle located at 1233 S. Saratoga Street, Apt. 3. The warrant was issued on the following reasons and facts contained in the application for the warrant submitted by Sergeant Steven Gaudet:
On Saturday, October 25, 1997, in the early evening hours, Sergeant Steven Gaudet, Commander of the Sixth District Task Force, met with an untested confidential informant. The informant directed the investigator to an apartment located at 1233 S. Saratoga Street, and cited apartment 3 as being a retail distribution outlet for marijuana. The apartment in question was identified to the investigator as the apartment down the right side alley next to two white water heaters. The informant advised the investigator that a Negro male, identified as Warren Creecy, aka: "Jungleman", was selling retail quantities of marijuana upon demand from the residence. The factual basis for this knowledge was said to be from personal purchases of marijuana for self-indulgence within the past 72 hours.
The informant described Creecy as being an elderly Negro male, late 50's or early 60's, approximately 6' tall, 240 pounds. Creecy was said to be currently attired in a light colored shirt, dark colored pants and a baseball type hat. Creecy's vehicle was described as a 1977 or 1978 Buick, 4-door, yellow in color, bearing Louisiana license plate EVC-127, and was parked near the front of this location.

*617 After receiving the above information, Sergeant Gaudet drove into the immediate area of the target location to determine if the suspect was still in the area. Sergeant Gaudet drove through the 1200 block of S. Saratoga Street and immediately observed the suspect's vehicle parked near Glady's Bar on the lakeside of the street. Sergeant Gaudet also noted a prolific amount of pedestrian traffic going in and coming out of the alley on the right side of 1233 S. Saratoga Street.
Based on the information received from the informant, Sergeant Gaudet elected to conduct a surveillance on the target location. To this end, Sergeant Gaudet positioned himself in a location which afforded him a clear and unobstructed view of the target location. Within minutes after establishing his surveillance, Sergeant Gaudet noted several pedestrians walking down the right alley and entering the apartment at the rear of the building. These pedestrians would stay only a short period of time and then leave. While Sergeant Gaudet was in his surveillance position, a Negro male attired in a light blue T-shirt and blue jeans walked past his location. The Negro male appeared startled and continued walking. The Negro male crossed the street and walked down the alley on the right side of 1233 S. Saratoga Street. He then entered the apartment located to the right side of two white water heaters.
Less than a minute had passed when the Negro male with the light blue T-shirt and blue jeans emerged from the alley and began walking west on S. Saratoga Street. Suddenly, a tall, heavyset Negro male, approximately 50-60 years of age, attired in a light colored T-shirt and dark colored pants exited the target location and walked out of the alley onto S. Saratoga Street. This Negro male, later identified as the target of the investigation, Warren Creecy, began looking around in all directions. Believing that his surveillance position had been compromised, Sergeant Gaudet vacated his position and returned to his police vehicle. Sergeant Gaudet then contacted Police Officers Robert Ferrier and Kyle Hinrichs and requested that they meet with him as soon as possible at the intersection of Clio Street and Simon Bolivar Boulevard. As soon as Police Officers Ferrier and Hinrichs arrived, Sergeant Gaudet apprised them of circumstances surrounding his investigation. It was the investigators['] belief that the investigation had in fact been compromised. Sergeant Gaudet advised Ferrier and Hinrichs that it was necessary to detain Creecy to prevent the possible destruction of evidence in this investigation.
With the above in mind, Gaudet, Ferrier and Hinrichs and Gaudet proceeded to the 1200 block of S. Saratoga Street and located Creecy standing in front of the alley on the right side of 1233 S. Saratoga Street. Creecy was at this time detained and informed that he was under investigation for narcotics trafficking and orally advised of his Constitutional Rights as per the Miranda Decision. For the safety of all persons involved, Creecy was placed into handcuffs. Ferrier at this point conducted a pat down of Creecy's outer clothing for weapons. No weapons were found. However, the officer did feel the unmistakable outline of a small package consistent with narcotics packaging in Creecy's left front pants pocket. Ferrier retrieved the package and discovered it to be a small clear plastic ziplock bag containing a green vegetable matter believed to be marijuana. At this point Ferrier placed Creecy under arrest for possession of marijuana and again reminded him of his rights. The officer noted that the confiscated package was consistent with retail street level distribution packaging.
Predicated on the above information, it is the belief of the undersigned affiant that contraband controlled dangerous substances, more specifically marijuana, *618 are being secreted within and distributed from the residence located at 1233 S. Saratoga Street, Apartment 3, located within the City of New Orleans. For these reasons, it is respectfully requested that this warrant be signed ordering the search of this residence.
The execution of the search warrant resulted in the seizure of one ziplock plastic bag containing 108.77 grams of marijuana, one brown paper bag containing nine green plastic bags, each containing marijuana weighing a total of 19.92 grams, and one brown paper bag containing nine hand-rolled marijuana cigarettes, weighing a total of 8.69 grams. In addition, several weapons, ammunition, and variously sized packaging material, consistent with the sale of marijuana, were seized from the defendant's residence.
The court denied the motion to suppress the evidence. The court found that, during his surveillance, Officer Gaudet observed a number of people briefly entering and exiting the alley to the defendant's residence. Officer Gaudet also observed a man become startled upon his sight of the officer and enter the alley. Seconds later, the defendant exited his residence and looked around outside. The court concluded that the totality of the information provided by the informant and the observations of Officer Gaudet gave the officers the right to stop the defendant and "pat him down," which resulted in the seizure of marijuana from his pants pocket and his subsequent arrest. The court noted that the seizure of the marijuana on defendant's person further corroborated the information provided by the informant that was used to obtain the search warrant for the premises.

Assignment of Error No. 1
By his sole assignment of error, the defendant asserts the marijuana found on his person and in his apartment was seized pursuant to an illegal arrest. Though he concedes that an investigatory stop might have been justified under the circumstances, the defendant asserts the police "skipped over an investigatory stop and went straight to an arrest" for which there was no probable cause. Noting that Officer Gaudet described the confidential informant as "untested," the defendant argues the officer did not have trustworthy information sufficient to justify probable cause to arrest him. In support of his argument, the defendant relies primarily on State v. Raheem, 464 So.2d 293 (La. 1985), State v. Ruffin, 448 So.2d 1274 (La. 1984), and State v. Carey, 609 So.2d 897 (La.App. 4th Cir.1992).
The State concedes the defendant was arrested. However, distinguishing Raheem and Ruffin, the State argues the police officers had sufficient probable cause to arrest the defendant and to conduct a search of his person pursuant to a lawful arrest. Alternatively, the State argues that, even if the police did not have probable cause to arrest the defendant, the officer had sufficient reasonable suspicion to effect an investigatory stop and to conduct a safety pat-down. The State contends the evidence would have been inevitably discovered as a result of the pat-down; therefore, it argues the district court correctly denied the motion to suppress the evidence.
In the instant case, we initially conclude that an arrest occurred, rather than a mere investigatory stop. The defendant was detained, informed that he was under investigation for drug trafficking, given his Miranda rights, and handcuffed. Though the defendant was not specifically informed that he was under arrest, he was clearly not free to leave. See State v. Allen, 95-1754, pp. 5-6 (La.9/5/96), 682 So.2d 713, 718-19.
A search conducted without a warrant is per se unreasonable, subject only to a few specifically established and well-delineated exceptions. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); State v. Tomasetti, 381 So.2d 420 (La.1980). One of those exceptions is a search incident to a lawful *619 arrest made of a person and the area in his immediate control. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); Tomasetti, 381 So.2d at 423.
A warrantless arrest must be based on probable cause. State v. Jackson, 450 So.2d 621, 627 (La.1984). Probable cause exists when the facts and circumstances, either personally known to the arresting officer or of which he has reasonably trustworthy information, are sufficient to justify a man of ordinary caution in believing that the person to be arrested has committed a crime. State v. Fisher, 97-K-1133, p. 7 (La.9/9/98), 720 So.2d 1179, 1184. Probable cause is assessed on an objective standard that must withstand the "detached, neutral scrutiny of a judge." Id., p. 8, 720 So.2d at 1184 (quoting State v. Flowers, 441 So.2d 707, 712 (La.1983)). In determining whether probable cause existed, the court must take into account the "practical considerations of everyday life on which...average police officers can be expected to act." Id. (quoting State v. Raheem, 464 So.2d at 296).
A confidential informant may provide adequate information to establish probable cause for a warrantless arrest, so long as the basis for the informant's knowledge and the informant's reliability, when examined under the totality of the circumstances, are established. Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); State v. Burton, 416 So.2d 73 (La.1982). Corroboration of details of an informant's tip by independent police investigation is valuable in applying the totality of the circumstances analysis. Illinois v. Gates, supra.[1]
In Raheem, the police received information from an informant who had provided reliable information in the past that led to many arrests and convictions. The informant told the police that two men were selling drugs from a particular car on a particular street corner. When the police arrived at that location they observed the two men described by the informant. The police arrested the two men and found drugs in their possession. The Supreme Court reversed the finding of probable cause to arrest. The court determined that the basis of the informant's knowledge that the two men were selling drugs was neither revealed to the police nor corroborated. The court found that no articulated facts connected the two men with unlawful activity. The informant's statement to police that the two men were selling drugs was wholly conclusive. The court concluded that, under the totality of the circumstances presented, no probable cause existed for the defendants' arrests.
In Ruffin, a reliable informant told the police that the defendant had stolen a check and was standing on a particular street corner trying to get someone to help him cash the check. The police arrived at the described location and observed the defendant. However, they did not observe the defendant engage in any illegal or suspicious activity prior to his arrest. During a search incident to his arrest, evidence was seized from the defendant. The Supreme Court found that, under the totality of the circumstances, no probable cause existed to arrest the defendant.
In Carey, an informant told the police that the defendant, a short black man, would be driving a green Cougar and making a cocaine drop in the 2300 block of Lafitte. The police observed the defendant at the described location and followed *620 him for a period of time, but they did not observe any suspicious activity. The officers conducted an investigatory stop, allegedly based on reasonable suspicion. In finding that the stop was illegal, this court concluded that the basis of the informant's knowledge was never established: there was no proof or claim (1) that the informant purchased cocaine from the defendant or other identified seller, or (2) that the informant was present when the defendant was told to deliver the cocaine.
In the instant case, the informant provided Officer Gaudet with the defendant's name, his physical description, a description of his clothing, the address of the residence, a physical description of the location from which the marijuana was being sold, and the description, location, and license plate number of the defendant's car. In addition, the informant advised Officer Gaudet that he had personal knowledge of drug activity, having purchased marijuana from the defendant at that location within the last seventy-two hours. As a result of this tip, Officer Gaudet established a surveillance of the location during which he observed what he considered to be an inordinate amount of pedestrian traffic entering the alley leading to the defendant's apartment. Several pedestrians entered the apartment, remained several minutes, and then left. At one point, a pedestrian became startled at the sight of the officer, entered the alley, and proceeded to the defendant's apartment. Shortly thereafter, Officer Gaudet observed a man, fitting the description of the defendant given by the informant, walk out of the apartment and look around. After conferring with other officers, the police then approached the defendant and arrested him.
Up to that point, the officers still did not have probable cause to effect the defendant's arrest. The only indication of allegedly illegal activity on the part of the defendant was the informant's claim that he had purchased drugs from the defendant at this location within seventy-two hours of making the tip known to the police. However, this unidentified person was not known to the police as a reliable informant, nor was his allegation of having purchased drugs from the defendant independently verified by a controlled purchase.
Furthermore, the surveillance conducted by Officer Gaudet did not establish the informant's veracity or reliability, much less verify the alleged basis of the informant's knowledge. The information regarding the defendant's physical description, his residence, and his vehicle were all innocent facts that could have been obtained by a casual observer. Tellingly, the informant did not provide information predicting the defendant's future behavior, so that one could reasonably conclude, if the predictions came true, that the informant had knowledge of facts unknown to the general public. See and compare State v. Robertson, 97-2960 (La.10/20/98), 721 So.2d 1268. Without such information, the officers could not reasonably assess the untested informant's inside knowledge of, or his "special familiarity" with, the defendant's affairs. Id., p. 5, 721 So.2d at 1270.
Nor did the surveillance reveal any additional facts and circumstances suggesting that the defendant had engaged in criminal conduct. Though Officer Gaudet in the warrant application described the traffic in the alley as "prolific," he did not provide any basis for believing that such traffic indicated illegal drug activity. Except for the fact that there was a bar located in the same block as the residence, there is no statement that the neighborhood was a high crime area noted for illegal drug activity.
In sum, the officers had only a bald allegation from an unknown and untested informant that the defendant had sold him drugs. Were we to find probable cause on such a naked basis, given that a relatively observant onlooker can acquire accurate details describing a person, his residence, and his vehicle, any citizen would be subject to arrest on such a claim. We conclude *621 that the officers did not possess sufficient facts and circumstances to justify a person of ordinary caution in believing the defendant was engaged in the sale of marijuana.
Nor do we find this a case of inevitable discovery, as the State would have it. Even were we to assume the officers effected only an investigatory stop of the defendant, the circumstances as set forth in the warrant application do not establish that the officers were justified in searching the defendant for weapons, a search that led to the seizure of the marijuana on his person and that served as the basis for the search warrant for the residence. In State v. Hunter, 375 So.2d 99 (La.1979), the Louisiana Supreme Court stated that, even after a lawful investigatory stop, a police officer is justified in frisking the subject only under circumstances that warrant a prudent man to believe that his safety or that of others is in danger. The officer's belief is not reasonable unless he is able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous. Id.
In the instant case, the application for the warrant does not reflect that Officer Gaudet articulated particular facts necessitating a search of the defendant's person for weapons. The application merely states, "For the safety of all persons involved, Creecy was placed in handcuffs. Ferrier at this point conducted a pat down of Creecy's outer clothing for weapons." These statements, without more, do not support a finding that the officers reasonably inferred that the defendant was armed and dangerous.
In conclusion, we find that the warrantless arrest of the defendant was not made pursuant to probable cause. Consequently, the subsequent seizure of the marijuana from the defendant's person was not lawful. As such, the evidence seized from the defendant's person and the evidence seized from the residence should have been suppressed as fruits of the unlawful arrest. Accordingly, we reverse the district court's ruling denying the motion to suppress the evidence and remand the matter to the district court.
REVERSED AND REMANDED.
BYRNES, J., DISSENTS WITH REASONS
BYRNES, J., dissenting.
I respectfully dissent based on my conclusion that the trial court erred in granting the defendant's motion to suppress.
The police officers had probable cause to arrest Warren Creecy based on the information from the informant, the corroboration of the tip, and that the contraband was seized following a search incidental to the arrest. In the alternative, the package of marijuana was discovered during an investigatory stop and lawful frisk for weapons. The contraband retrieved from the residence was found pursuant to a valid search warrant.
Probable cause to arrest exists when the facts and circumstances known to the officer and of which he has reasonably trustworthy information are sufficient to justify a man of ordinary caution to believe the person to be arrested has committed a crime. State v. Dubuclet, 623 So.2d 668, 669 (La.App. 4 Cir.1993). For an arrest, the law does not require that "reasonable cause to believe" be supported by evidence sufficient to convict; the arresting officer need not be convinced beyond a reasonable doubt of the arrested person's guilt. State v. Jones, 98-0963 (La.App. 4 Cir. 6/24/98), 720 So.2d 1. The standard of reasonable cause to believe is a lesser degree of proof than beyond a reasonable doubt, determined by the setting in which the arrest took place, together with the facts and circumstances known to the arresting officer from which he might draw conclusions warranted by his training and experience. Id. Probable cause for an arrest must be judged by the probabilities and practical considerations of everyday life in which average people, and particularly average *622 police officers, can be expected to act. Id. Probable cause to arrest will not be defeated simply because innocent explanations for activity can be imagined. See also State v. Young, 93-0414 (La.App. 4 Cir. 8/17/94), 642 So.2d 255.
An arrest occurs when the circumstances indicate an intent to affect an extended restraint on the liberty of the accused, rather than at the precise time an officer tells an accused he is under arrest. La.C.Cr.P. art. 201; State v. Raheem, 464 So.2d 293, 296 (La.1985). Probable cause to arrest exists when the facts and circumstances known to the officer are sufficient to justify a man of ordinary caution to believe the person to be arrested has committed a crime. State v. Matthews, 94-2112, p. 5 (La.App. 4 Cir. 4/26/95), 654 So.2d 868, 871.
In State v. Allen, 95-1754, pp. 5-6 (La.9/5/96), 682 So.2d 713, 718-719, the Supreme Court stated:
... La.C.Cr.P. art. 201 defines arrest as "the taking of one person into custody by another ... [by] actual restraint of the person." In distinguishing between an investigatory stop and an arrest, courts have considered numerous factors. In Dunaway v. New York, 442 U.S. 200, 99 S.Ct., 2248, 60 L.Ed.2d 824 (1979), the United States Supreme Court found a stop for questioning was indistinguishable from a traditional arrest because the suspect was not questioned briefly where he was but transported to the police station, was never informed he was free to go and, in fact, would have been restrained had he tried to leave. The United States Supreme Court in Michigan v. Chesternut, 486 U.S. 567, 574, 108 S.Ct. 1975, 1979, 100 L.Ed.2d 565 (1988) (quoting INS v. Delgado, 466 U.S. 210, 215, 104 S.Ct. 1758, 1762, 80 L.Ed.2d 247 (1984); United States v. Mendenhall, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980)) stated that "any assessment as to whether police conduct amounts to a seizure implicating the Fourth Amendment must take into account all of the circumstances surrounding the incident in each individual case." The Mendenhall Court also stated that in determining whether a person has been seized under the Fourth Amendment, one must determine whether a reasonable person would have believed he was free to leave. Mendenhall, 446 U.S. at 554, 100 S.Ct. at 1877. This court has considered this issue and determined that "it is the circumstances indicating intent to effect an extended restraint on the liberty of the accused, rather than the precise timing of an officer's statements: `You are under arrest,' that are determinative of when an arrest is actually made." State v. Giovanni, 375 So.2d 1360, 1363 (La. 1979) (quoting State v. Sherer, 354 So.2d 1038, 1042 (La.1978)); see also, State v. Davis, 558 So.2d 1379, 1382 (La.[App. 5th Cir.]1990); State v. Simms, 571 So.2d 145, 148 (La.1990). In both Giovanni and Simms, this court found an arrest based on the fact that the defendant was not free to leave.
It is not a prerequisite for a finding of probable cause that the police know at the time of the arrest that a particular crime has definitely been committed. State v. Simms, 571 So.2d 145 (La.1990). While knowledge of the commission of a crime is frequently an important factor in the determination of probable cause, probable cause may exist when the commission of a crime has not been definitely established. Id. It is sufficient that it be reasonably probable that a crime has been committed under the totality of the known circumstances. Id. While it takes more and better evidence to provide probable cause when the police do not know a crime has been committed, probable cause is to be judged by the probabilities and practical considerations of everyday life on which average men, particularly average police officers, can be expected to act. State v. Drott, 412 So.2d 984 (La.1982); State v. Hebert, 95-1645 (La.App. 3rd Cir.6/5/96), *623 676 So.2d 692, writ denied 96-1736 (La.10/11/96), 680 So.2d 643.
In State v. Butler, 96-1600, pp. 3-4 (La. App. 4 Cir. 8/27/97), 700 So.2d 224, 226, this Court stated:
The evidence supports the conclusion that this was an arrest and a search incident thereto. The police received an anonymous phone call reporting that an individual was selling narcotics in front of the Fast Stop Grocery Store. Upon arriving at the location, the police observed the defendant, whose clothing matched the description given by the informant, conduct what the police officers believed to be a hand to hand narcotics transaction. Officer Belisle testified that the transaction took place in broad daylight while the officers were standing within ten feet of the defendant. A short time later, a marked police vehicle turned onto South Dorgenois Street. When the defendant saw the approaching vehicle he placed his hands in his pockets and went into the store. Officer Belisle followed the defendant into the store and observed him purchase a bottle of water. When the defendant exited the store and walked to the corner, Officers Belisle, Butler and Carroll stopped him, informed him he was under investigation for narcotics and read him his Miranda rights. Given these facts, it is clear that the defendant was under arrest at that moment. Consequently, the search was lawful as an incident to the arrest. Likewise, the evidence consisting of the information obtained from the informant and the activities observed by the police during their surveillance in an area known for drug trafficking supports probable cause for the arrest.
The majority refers to State v. Raheem, supra, State v. Ruffin, 448 So.2d 1274 (La.1984), and State v. Carey, 609 So.2d 897 (La.App. 4 Cir.1992). The present facts are distinguishable from the facts in Raheem, Ruffin and Carey. In those cases, the informant provided no basis for the tip and no corroboration by the police was established prior to the defendants' arrests.
In the present case, Creecy was placed under arrest when the police approached, informed him he was under investigation for narcotics trafficking, handcuffed him, informed him of his rights, and frisked him. In State v. Butler, id., the anonymous caller gave a description of the clothes worn by the subject selling contraband.
In the present case, the informant provided Officer Gaudet with the defendant's name, his nickname, his exact physical description, a description of the clothes that Creecy was wearing on that day, the exact address and physical description of the location from which the marijuana was being sold and, the description, location and license plate number of Creecy's car. In addition, the informant advised Officer Gaudet that he had personal knowledge of this information from having purchased marijuana from defendant at that location within the last seventy-two hours. As a result of this tip, Officer Gaudet established a surveillance of the location during which he observed an inordinate amount of pedestrian traffic entering the alley leading to Creecy's apartment. The pedestrians would remain several minutes and then leave. When Officer Gaudet observed a man, fitting the exact description of Creecy given by the informant, walk out of the apartment and look around within seconds of the startled pedestrian entering the alley, Officer Gaudet had sufficient facts and circumstances to justify a man of ordinary caution to believe defendant was engaged in selling marijuana.
As in Butler, in the present case, the evidence, consisting of the information obtained from the informant and the activities observed by the police during their surveillance, supports probable cause for a legal arrest. Applying the totality of the circumstances standard, the police had sufficient probable cause to arrest defendant. Once Creecy was arrested, the officers had *624 the right, incident to the arrest, to search Creecy for weapons. The seizure of the marijuana from Creecy's person, pursuant to that search, was legal. Once defendant was found to be in possession of marijuana, probable cause existed to issue the warrant to search his residence. The marijuana found pursuant to the execution of the warrant was also legal.
Furthermore, the search was legal not only pursuant to an arrest but also pursuant to an investigatory stop. A law enforcement officer may stop a person in a public place whom he reasonable believes is committing, has committed, or is about to commit an offense. La.C.Cr.P.Art. 215.1. "Reasonable suspicion" for an investigatory stop is something less than the probable cause required for an arrest, and the reviewing court must look to the facts and circumstances of each case to determine whether the detaining officer had sufficient articulable facts within his knowledge to justify an infringement of the suspect's rights. State v. Matthews, supra; State v. Vance, 93-1389 (La.App. 4 Cir.2/25/94), 633 So.2d 819.
In State v. Kalie, 96-2650 (La.9/19/97), 699 So.2d 879, 881, the Louisiana Supreme Court found that: "the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken so long as the circumstances, viewed objectively, justify that action," citing Scott v. United States, 436 U.S. 128, 138, 98 S.Ct. 1717, 1723-1724, 56 L.Ed.2d 168 (1978). Even if the officers do not articulate reasons justifying a stop and search, the officers only need "articulable facts" taking into account the entire picture.
In assessing the reasonableness of an investigatory stop, the court must balance the need to search and seize against the invasion of privacy that the search and seizure entails. State v. Tucker, 604 So.2d 600 (La.App. 2 Cir.1992), affirmed in part, reversed in part on other grounds, 626 So.2d 720 (La.1993); State v. Washington, 621 So.2d 114 (La.App. 2 Cir.1993), writ denied, 626 So.2d 1177 (La.1993). The intrusiveness of a search is not measured so much by scope as it is by whether it invades an expectation of privacy that society is prepared to recognize as reasonable. Twenty-Three Thousand Eight Hundred Eleven and No/100 ($23,811) Dollars in U.S. Currency v. Kowalski, 810 F.Supp. 738 (W.D.La.1993).
In reviewing the totality of circumstances, the officer's past experience, training and common sense may be considered in determining if his inferences from the facts at hand were reasonable. State v. Short, 96-1069 (La.App. 4 Cir. 5/7/97), 694 So.2d 549. The reputation of an area is an articulable fact upon which an officer can rely and which is relevant in the determination of reasonable suspicion. State v. Richardson, 575 So.2d 421 (La.App. 4 Cir. 1991), writ denied, 578 So.2d 131 (La. 1991). Deference should be given to the experience of the police who were present at the time of the incident. State v. Short, supra.
An investigatory stop, requiring only a reasonable suspicion, is as complete a restriction on the liberty of movement as an arrest; a stopping for investigation is not lesser intrusive because the restriction of movement is incomplete, but rather because it is briefer than an arrest. State v. Vincelli, 555 So.2d 21 (La.App. 1 Cir.1989); State v. Walker, 530 So.2d 1200 (La.App. 2 Cir.1988), writ denied 532 So.2d 763 (La. 1988); State v. Senegal, 95-796 (La.App. 3 Cir. 12/6/95), 664 So.2d 832. Inherent in an officer's right to make an investigatory stop of an individual and to demand his name, address, and explanation of his actions is the right to detain the subject temporarily to verify information given or to obtain information independently of his cooperation. State v. Cabanas, 594 So.2d 404 (La.App. 1 Cir.1991), writ denied 598 So.2d 371 (La.1992); State v. Moncriffe, 522 So.2d 1187 (La.App. 4 Cir.1988).
*625 In the present case, there was clearly reasonable suspicion to justify an investigatory stop of Creecy, given the information from the informant and the observations of the police officers.
La.C.Cr.P. art. 215.1(B) provides for a limited frisk for weapons during an investigatory stop:
When a law enforcement officer has stopped a person for questioning pursuant to this Article and reasonably suspects that he is in danger, he may frisk the outer clothing of such person for a dangerous weapon. If the law enforcement officer reasonably suspects the person possesses a dangerous weapon, he may search the person.
The officer need not be absolutely certain that the person is armed, but the officer must be warranted in his belief that his safety or that of others is in danger. State v. Smith, 94-1502 p. 5 (La.App. 4 Cir. 1/19/95), 649 So.2d 1078, 1082. It is clear that an officer may make a protective search of the suspect for his own safety and the safety of others. State v. Davis, 92-1623 (La.1994), 637 So.2d 1012, cert. denied, Davis v. Louisiana, 513 U.S. 975, 115 S.Ct. 450, 130 L.Ed.2d 359 (1994).
In State v. Wartberg, 586 So.2d 627 (La. App. 4 Cir.1991), this court noted that any person who is suspected of dealing drugs is probably armed with a weapon and officers need not refer to specific particular facts concerning the danger to their safety.
In the present case, the police handcuffed and patted down the defendant for safety reasons. Officer Gaudet stated that "for the safety of all persons involved, Creecy was placed in handcuffs. Ferrier at this point conducted a pat down of Creecy's outer clothing for weapons." As indicated from the search warrant application, the police informed the defendant that "he was under investigation for narcotics trafficking." This articulable factor, that drugs were involved, provided a reason for the officers to fear for their safety. This factor supports the officers' concern for their safety and the necessity for a frisk of the defendant. Given the facts and circumstances known to Officer Gaudet and because weapons and violence are commonly associated with illegal drug activity, the officers could reasonably infer that Creecy was armed and dangerous, thus justifying the handcuffing and search of the defendant.
Although the actions of the subjects may have been innocent if considered individually, under the totality of the circumstances the whole picture, giving deference to the inferences and deductions of a trained officer that might well elude an untrained person, the officers had reason to justify the investigatory stop and the arrest. The search of Creecy was valid pursuant to a legal arrest; however, the officer's pat down of the defendant for weapons was also justified based on a proper investigatory stop.
Considering that the officers had reasonable suspicion for an investigatory stop, this case would fall within the "plain feel" exception recognized in Minnesota v. Dickerson, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). Under Dickerson, when a police officer lawfully pats down a suspect's clothing for weapons and feels an object whose contour or mass makes its identity immediately apparent to be contraband, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons.
In State v. Lavigne, 95-0204 (La.App. 4 Cir. 5/22/96), 675 So.2d 771, writ denied, 96-1738 (La.1/10/97), 685 So.2d 140, a crack pipe was lawfully seized because it was immediately apparent to the officer that the object felt like a crack pipe based on the officer's sense of touch. The officer could not know for certain until he actually looked at it to confirm that it appeared to be a crack pipe.
If an officer felt what he thought was immediately apparent to be a weapon such as a knife or gun based on his sense of touch, he could only confirm what the object *626 actually was by removing it and looking at it. The weapon would be properly seized. Similarly, to be certain of what the object was, an officer would have to look at what he had immediately believed to be a package of contraband. The contraband would be properly seized based on the officer's immediate belief through his sense of touch.
In the present case, according to the search warrant application, "the officer did feel the unmistakable outline of a small package consistent with narcotics packaging in Creecy's left front pants pocket." Under the totality of circumstances, giving deference to the police officer's training, the package of contraband would be properly seized pursuant to an investigatory stop based on the officer's immediate and reasonable belief that it was a package of contraband. There was no invasion of the defendant's privacy beyond that already authorized by the officer's search for weapons. The package of contraband would be properly seized pursuant to an investigatory stop as well as pursuant to a valid arrest. The contraband retrieved from the residence was found pursuant to a valid search warrant.
Accordingly, I would affirm the defendant's conviction and sentence.
NOTES
[1] In Gates, the United States Supreme Court abandoned the strict, two-pronged test previously used in evaluating whether or not information given by a confidential informant was sufficient to establish probable cause. The two-pronged test, which was developed in Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and in Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), prohibited a finding of probable cause based upon information given by a confidential informant unless both the "veracity," or "reliability," and the "basis of knowledge" of the informant could be shown. Nevertheless, the Court indicated that the veracity, reliability and basis of knowledge of the informant continue to be "highly relevant" in determining probable cause.