CHARLES R. JONES, Judge.
 

 1 jThe Appellant, Joseph Marino, appeals his conviction for possession of heroin and his sentence of seven (7) years at hard labor with credit for time served. Finding that the district court erred in denying the motion to suppress of Marino, we reverse the judgment of the district court and remand this matter to the district court for further proceedings.
 

 Defendant, Joseph Marino, was' charged by bill of information with possession of heroin. The district court later found probable cause and denied Marino’s motion to suppress evidence. Marino sought review of the district court’s ruling, and filed a writ application with this Court, which this Court denied, and noted: “The
 
 *744
 
 defendant’s application for supervisory writ is denied. In the event of a conviction, the defendant may re-raise the issue on appeal.”
 
 State v. Marino,
 
 unpub., 2010-1405 (La.App. 4 Cir. 10/6/10).
 

 Subsequently, Marino appeared for trial and pled guilty pursuant to
 
 State v. Crosby,
 
 338 So.2d 584 (La.1976). He was sentenced to serve seven (7) years at hard labor. The district court granted Marino’s motion for appeal. The instant appeal was timely lodged in this Court.
 

 | {.Sergeant Jeff Sislo and Detectives Michael Dalfares, Christopher Henley, and Andrew Roccaforte investigated a tip from an untested confidential informant, who advised the officers that Joseph Marino was selling heroin in and around the city of New Orleans. The informant advised that he knew the subject was selling heroin because he had personally purchased heroin from the subject, although he did not give any specific times or dates when he purchased the heroin. The informant advised that the subject was a white male, aged fifty to fifty-five years, with gray hair. The informant further advised the officers of the location of the subject’s residence and the two vehicles he drove: a red Harley Davidson motorcycle and a blue Chevy truck.
 

 Based on the informant’s tip, the officers set up a surveillance of the subject’s residence. During their surveillance, the officers observed Marino leave his residence, get onto a Harley Davidson motorcycle, and drive to a nearby bank in Algiers Point. The officers then observed Marino leave the bank, drive across the bridge to Jefferson Highway, and stop at an apartment on Berry Street in Jefferson Parish. The officers observed Marino go into the apartment, meet with an unknown black male, and come out of the apartment a short time later. The officers further observed Marino go back to his motorcycle, take his wallet out of the saddle bag on his motorcycle, put something into his wallet, get back on his motorcycle, and drive back into Orleans Parish.
 

 Based on the information they received and the actions they witnessed, Sergeant Sislo and Detective Henley elected to stop Marino to investigate the incident further. The officers stopped Marino in the 8900 block of South Claiborne Avenue in Orleans Parish. Once they approached Mari-no, the officers advised Marino that he was under investigation for possession of narcotics and read him his
 
 Miranda
 
 rights. Sergeant Sislo testified that Marino was “kind of shaking and looking around a little bit. And ... his speech, his tone of voice just kind of changed once we told him he was | .-¡under investigation for narcotics.” The officers then asked Marino if they could search the saddle bag on his motorcycle, and Marino said they could. The officers opened the saddle bag, found a wallet inside, opened the wallet, and found two folded pieces of foil, both of which contained a tan powder they recognized to be heroin. The officers later conducted a preliminary field test of the tan powder, and it tested positive for heroin.
 

 A review of the record reveals no patent errors.
 

 In his appeal, Marino asserts four separate assignments of error: (1) his motion to suppress should have been granted because there was no reasonable suspicion or probable cause to stop defendant and search his belongings; (2) his motion to suppress should have been granted because he was arrested the moment he was stopped by the officers; (3) his motion to suppress should have been granted because he was not informed of his right to refuse the officer’s request to search his belongings; and (4) his motion to suppress should have been granted because he did not legally consent to a search. However,
 
 *745
 
 we find that assignments of error numbers 2-4 are repetitive and/or moot, as they are all adequately addressed by Marino’s initial assignment of error — that the officers had no reasonable suspicion or probable cause to stop him and search his belongings. Thus, a discussion of assignments of error numbers 2-4 is pretermitted.
 

 Marino argues that the district court erred in denying his motion to suppress the evidence because the arresting officers lacked reasonable suspicion and/or probable cause to stop Marino and search his belongings. In support of his argument, Marino relies primarily on
 
 State v. Creecy,
 
 98-1472 (La.App. 4 Cir. 7/14/99), 742 So.2d 615.
 

 At a hearing on a motion to suppress, the State has the burden of proving the admissibility of all evidence seized without a warrant. La.C.Cr.P. art. 703(D). Trial courts are vested with great discretion when ruling on a motion to suppress, and the |4ruling of a trial judge on such a motion will not be disturbed absent an abuse of that discretion.
 
 State v. Oliver,
 
 99-1585, p. 4 (La.App. 4 Cir. 9/22/99), 752 So.2d 911, 914.
 

 In the instant case, the officers received a tip from an untested confidential informant that Marino was selling heroin throughout the City of New Orleans. The officers acted on the untested informant’s tip and set up surveillance of the residence of Marino. During their surveillance of his residence, the officers witnessed Mari-no get on his motorcycle and travel to a nearby bank. Thereafter, the officers witnessed Marino get back on his motorcycle, travel to an apartment in Jefferson Parish, go inside the apartment, and, shortly thereafter, exit the apartment. The officers then witnessed Marino take a wallet out of the saddle bag on his motorcycle, put something into his wallet, and drive away. Based on the foregoing acts, the officers elected to conduct an investigatory stop of Marino and pulled him over once he was back in Orleans Parish. After stopping him, the officers immediately told him that he was under investigation for possession of narcotics and read him his
 
 Miranda
 
 rights.
 

 A law enforcement officer may stop a person in a public place whom he reasonably believes is committing, has committed, or is about to commit an offense. La.C.Cr.P. art. 215.1. However, the right to make such an investigatory stop must be based upon a reasonable suspicion that the individual has committed or is about to commit an offense.
 
 Terry v. Ohio,
 
 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968);
 
 State v. Andrishok,
 
 434 So.2d 389, 391 (La.1983). In assessing the reasonableness of an investigatory stop, the court must balance the need to search and seize against the invasion of privacy the search and seizure entails.
 
 State v. Tucker,
 
 92-2093, 92-2130 (La.5/24/93), 626 So.2d 707;
 
 State v. Williams,
 
 421 So.2d 874, 875 (La.982). The totality of the circumstances must be considered in determining whether reasonable suspicion exists.
 
 State v. Belton,
 
 441 So.2d 1195 (La.1983).
 

 The facts in
 
 State v. Creecy,
 
 98-1472 (La.App. 4 Cir. 7/14/99), 742 So.2d 615, are somewhat similar to the facts of the instant case, although the issue in
 
 Creecy
 
 was whether the police had probable cause to arrest the defendant, and the issue in the instant case is more than just whether the police had probable cause to arrest the defendant, but whether the police had reasonable suspicion to detain the defendant.
 

 In
 
 Creecy,
 
 an unknown and untested confidential informant indicated to the police that the defendant was selling marijuana from his residence. The factual basis for the informant’s knowledge was his own
 
 *746
 
 personal purchases of drugs from the defendant within the last seventy-two hours. The informant described the defendant, his clothing, and his vehicle, including the vehicle’s license plate number. The informant stated that defendant’s vehicle was parked near the front of his residence.
 

 Based on the informant’s tip, the officers set up a surveillance of the area. They observed the defendant’s vehicle parked in the area, and they saw a high volume of pedestrian traffic going in and coming out of the alley way on the right side of defendant’s residence. The officers observed the defendant come outside of the residence and, believing their investigation had been compromised, decided to detain the defendant to prevent the possible destruction of evidence. The officers detained the defendant and advised him that he was under investigation for narcotics trafficking. They conducted a pat down search and recovered a bag of marijuana. Upon finding the marijuana, the officers obtained a search warrant for the defendant’s residence, where they seized additional narcotics and weapons. The district court denied the defendant’s motion to suppress. This court reversed, and held:
 

 In the instant case, the informant provided [the officer] with the defendant’s name, his physical description, a description of his clothing, the address of the residence, a physical description of the location from which the marijuana was being sold, and the description, location, and license plate number of the defendant’s car. In addition, the informant advised [the officer] that he had personal knowledge of lr,drug activity, having purchased marijuana from the defendant at that location within the last seventy-two hours. As a result of this tip, [the officer] established a surveillance of the location during which he observed what he considered to be an inordinate amount of pedestrian traffic entering the alley leading to the defendant’s apartment. Several pedestrians entered the apartment, remained several minutes, and then left. At one point, a pedestrian became startled at the sight of the officer, entered the alley, and proceeded to the defendant’s apartment. Shortly thereafter, [the officer] observed a man, fitting the description of the defendant given by the informant, walk out of the apartment and look around. After conferring with other officers, the police then approached the defendant and arrested him.
 

 Up to that point, the officers still did not have probable cause to effect the defendant’s arrest. The only indication of allegedly illegal activity on the part of the defendant was the informant’s claim that he had purchased drugs from the defendant at this location within seventy-two hours of making the tip known to the police. However, this unidentified person was not known to the police as a reliable informant, nor was his allegation of having purchased drugs from the defendant independently verified by a controlled purchase.
 

 Furthermore, the surveillance conducted by [the officer] did not establish the informant’s veracity or reliability, much less verify the alleged basis of the informant’s knowledge. The information regarding the defendant’s physical description, his residence, and his vehicle were all innocent facts that could have been obtained by a casual observer. Tellingly, the informant did not provide information predicting the defendant’s future behavior, so that one could reasonably conclude, if the predictions came true, that the infor
 
 *747
 
 mant had knowledge of facts unknown to the general public. Without such information, the officers could not reasonably assess the untested informant’s inside knowledge of, or his “special familiarity” with, the defendant’s affairs.
 

 Nor did the surveillance reveal any additional facts and circumstances suggesting that the defendant had engaged in criminal conduct. Though [the officer] in [his] warrant application described the traffic in the alley as “prolific,” he did not provide any basis for believing that such traffic indicated illegal drug activity. Except for the fact that there was a bar located in the same block as the residence, there is no statement that the neighborhood was a high crime area noted for illegal drug activity.
 

 |7In sum, the officers had only a bald allegation from an unknown and untested informant that the defendant had sold him drugs. Were we to find probable cause on such a naked basis, given that a relatively observant onlooker can acquire accurate details describing a person, his residence, and his vehicle, any citizen would be subject to arrest on such a claim. We conclude that the officers did not possess sufficient facts and circumstances to justify a person of ordinary caution in believing the defendant was engaged in the sale of marijuana.
 

 Id.,
 
 98-1472, pp. 8-9, 742 So.2d at 620-21.
 

 In the matter
 
 sub judice,
 
 the officers, with the consent of Marino, seized drugs from his belongings, after the officer’s detained him for suspicion of possessing narcotics. It therefore must be determined whether the anonymous tip, together with subsequent corroboration by the police officers, provided reasonable suspicion for the investigatory detention of defendant.
 
 See, State v. Robertson,
 
 97-2960, p. 5 (La.10/20/98), 721 So.2d 1268, 1270.
 

 Marino was stopped by the officers based primarily on information given to them by an unknown and untested confidential informant. Although the officers were able to corroborate certain aspects of the anonymous tip, including Marino’s name, physical description, residence, and the location and description of his vehicles, the tip contained no predictive information from which the officers could reasonably determine whether the informant had “inside information” or a “special familiarity” with Marino’s affairs.
 
 See, Id.
 
 In particular, the tip failed to indicate the specific time period and location of when Marino had been or would be engaged in illegal activity. Since the tip did not provide sufficiently particular information concerning Marino’s future actions, an important basis for forming reasonable suspicion was absent.
 
 Id.
 

 Furthermore, although the officers set up surveillance of Marino, they did not observe him engaging in any conduct which would justify the belief that he | scommitted or was about to commit a criminal offense. Indeed, according to Sergeant Sislo’s own testimony, Marino left his residence, got on his motorcycle, stopped at a nearby bank, and then drove to an apartment in Jefferson Parish. He was observed going into the Jefferson Parish apartment and leaving the apartment a short time later. Marino was then observed taking his wallet out of the saddle bag on his motorcycle and putting something inside of his wallet before driving back to Orleans Parish. Yet, despite the absence of suspicious conduct or corroboration of information from which the officers could have concluded that the anonymous informant’s allegation of criminal activity was reliable, the officers pulled
 
 *748
 
 Marino over while he was driving his motorcycle, advised him that he was under investigation for narcotics possession, and read him his
 
 Miranda
 
 rights.
 
 See also, Creecy,
 
 97-2960, pp. 5-6, 721 So.2d at 1271.
 

 Reasonable suspicion for an investigatory detention is something less than probable cause and must be determined under the specific facts of each case by whether the officer had sufficient knowledge of the facts and circumstances to justify an infringement on the individual’s right to be free from governmental interference.
 
 Robertson,
 
 97-2960, pp. 2-3, 721 So.2d 1269. Therefore, in the instant case, justification for the investigatory detention of the defendant depends upon whether the anonymous tip, as corroborated by police, was sufficient to furnish reasonable suspicion of criminal activity.
 
 Id.
 

 In the instant case, the officers detained Marino based on a tip from an untested and unknown confidential informant that he was selling narcotics. The tip did not predict any future criminal activity that Marino was set to engage in, nor did it describe with adequate specificity any past criminal activity that Marino had previously engaged in. Based on the tip, the officers set up surveillance of Marino’s residence. The officers’ surveillance failed to establish that Marino was engaging in any conduct which would justify the belief that he committed or was about to commit 13a criminal offense. The officers’ actions in stopping Marino therefore constituted an imminent actual stop, which was not made pursuant to reasonable suspicion, and was therefore made in violation of Marino’s constitutional rights. Consequently, the subsequent seizure of heroin from Mari-no’s belongings was also not lawful. As such, the evidence seized from Marino’s saddle bag should have been suppressed as the fruit of an unlawful arrest.
 

 We find that this assignment of error has merit.
 

 DECREE
 

 For the foregoing reasons, the conviction and sentence of Joseph Marino is vacated, and the judgment of the district court is reversed. This matter is hereby remanded to the district court for further proceedings.
 

 REVERSED AND REMANDED