721 So.2d 1268 (1998)
STATE of Louisiana
v.
William ROBERTSON.
No. 97-KK-2960.
Supreme Court of Louisiana.
October 20, 1998.
Rudy W. Gorrell, Jr., New Orleans, for Applicant.
Richard P. Ieyoub, Atty. Gen., Harry F. Connick, Dist. Atty., Jane L. Beebe, New Orleans, for Respondent.
MARCUS, Justice.[*]
William Robertson was charged by bill of information with possession with intent to distribute cocaine in violation of La. R.S. 40:967. Defendant filed a motion to suppress the evidence. After hearing the testimony of several witnesses, the trial judge denied the motion.[1] Defendant's application to the court of appeal for supervisory writs was denied, with one judge voting to grant. On defendant's application to this court, we granted certiorari to review the correctness of the trial judge's denial of the motion to suppress.
Evidence adduced at the hearing reveals that on June 10, 1996, Officer Raymond Veit of the New Orleans Police Department received an anonymous telephone call from a concerned citizen via the Alcohol, Tobacco, and Firearms ("ATF") Hotline. The caller informed Officer Veit that an individual known as "Will," who drove a dark green Pontiac Grand Am with very dark tinted windows, was involved in the illegal sale of *1269 narcotics within the Magnolia Housing Development. The caller described Will as a black male, very dark complected, short and having the appearance of a juvenile. The caller further stated that the described vehicle would be parked in the 2800 block of Magnolia Street when Will "wasn't dropping off narcotics."
Officer Veit and ATF Agent Mike Hutton relocated to the 2800 block of Magnolia Street and identified a dark green Pontiac Grand Am with dark tinted windows parked in a driveway. While the officers were getting in position to set up surveillance, they observed the vehicle pull out of the driveway and begin to drive away. The officers followed the vehicle until it parked in the 2500 block of Sixth Street. When the driver exited the vehicle, the officers observed that he matched the description given by the caller. The officers then approached defendant and asked his name. After defendant identified himself as William Robertson, Officer Veit informed him that he was under investigation for narcotics. A canine detention unit was called to the scene and arrived approximately 10-15 minutes later. When the dog indicated that an odor of narcotics was coming from inside the vehicle, Officer Veit entered the vehicle and discovered a large plastic bag filled with crack cocaine underneath the ashtray. Thereafter, Officer Veit placed defendant under arrest.
The sole issue presented for our consideration is whether the information provided by the anonymous informant was sufficient to generate reasonable suspicion for the investigatory detention of defendant.
The Fourth Amendment to the United States Constitution and Article 1, § 5 of the Louisiana Constitution protect people against unreasonable searches and seizures. Measured by this standard, La.Code Crim. P. art. 215.1, as well as federal and state jurisprudence, recognizes the right of a law enforcement officer to temporarily detain and interrogate a person whom he reasonably suspects is committing, has committed, or is about to commit a crime. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Belton, 441 So.2d 1195, 1198 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984); State v. Fauria, 393 So.2d 688, 690 (La.1981). Reasonable suspicion for an investigatory detention is something less than probable cause and must be determined under the specific facts of each case by whether the officer had sufficient knowledge of facts and circumstances to justify an infringement on the individual's right to be free from governmental interference. Belton, 441 So.2d at 1198. In the instant case, justification for the investigatory detention of defendant depends upon whether the anonymous tip, as corroborated by police, was sufficient to furnish reasonable suspicion of criminal activity.
In Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the United States Supreme Court set forth a "totality of the circumstances" test to determine whether information from an anonymous informant established probable cause. In Gates, law enforcement officers received an anonymous letter informing them that Lance and Susan Gates were drug dealers. The informant detailed the Gates' plan to fly to Florida and drive back to Illinois with drugs hidden in the trunk of their car. Acting on the tip, police confirmed that Mr. Gates had arrived in Florida by plane and had departed from Florida heading north in a car with Illinois license plates. The Court held that there was probable cause to issue a search warrant based on police corroboration of the anonymous letter. In assessing the informant's tip, the Court abandoned the two-pronged test of Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), in favor of a totality of the circumstances test. The Court emphasized, however, that an informant's veracity, reliability, and basis of knowledge remain highly relevant factors in evaluating an informant's tip. Because significant aspects of the tip had correctly predicted the defendant's future actions, the Court concluded that police had reason to believe that the informant's other assertions about illegal activity were likely to be true.
Seven years after Gates, the U.S. Supreme Court applied the totality of the circumstances test to determine whether an anonymous *1270 tip established reasonable suspicion for an investigatory stop. Alabama v. White, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). Although reasonable suspicion is a less demanding standard than probable cause, "the content of information possessed by police and its degree of reliability" remain significant factors in the analysis. Id. at 330, 110 S.Ct. 2412. In White, an anonymous caller informed police that Vanessa White would leave apartment 235-C Lynwood Terrace Apartments at a particular time, get into a brown Plymouth station wagon with a broken taillight, and drive to Dobey's Motel. The tip further provided that she would be in possession of cocaine in a brown attache case. Police officers immediately proceeded to the apartment building and set up surveillance. They observed a woman, carrying nothing in her hands, get into a brown Plymouth station wagon parked in front of the 235 building. The officers followed the vehicle as she drove the most direct route to Dobey's Motel. When the vehicle reached a point just short of the motel, police stopped her. White consented to a search of the vehicle, and marijuana was discovered in a brown attache case located in the car. During processing at the police station, officers found cocaine in White's purse. The Court held that the anonymous tip, as corroborated, exhibited sufficient indicia of reliability to justify the investigatory stop of White's car. Although not every detail mentioned in the tip was verified by police prior to the stop,[2] the Court concluded that the informant's ability to predict White's future behavior, and police corroboration of significant aspects of the tip, were sufficient to furnish reasonable suspicion for the investigatory stop. Id. at 331-32, 110 S.Ct. 2412. Of particular significance to the Court was the informant's prediction of White's "future behavior." While anyone could have "predicted" that a car precisely matching the caller's description would be parked in front of the 235 building, the general public would have had no way of knowing that White would shortly leave the building, get into the described car, and drive the most direct route to Dobey's motel. Emphasizing the insider quality of predictive information, the Court concluded that verification of the "innocent" aspects of the anonymous tip gave police reason to believe that the allegations of criminal activity were probably true as well.
Against this legal landscape, we must determine whether the anonymous tip, together with subsequent corroboration by police officers, provided reasonable suspicion for the investigatory detention of defendant. As noted above, in assessing reasonable suspicion for a stop pursuant to an anonymous tip, the White Court stressed corroboration and predictiveness. In the instant case, it is true that the officers were able to corroborate certain aspects of the anonymous tip, including defendant's name, his physical description and the location of the described vehicle. The tip, however, contained no predictive information from which the officers could reasonably determine that the informant had "inside information" or a "special familiarity" with defendant's affairs. In particular, the tip failed to predict the specific time period in which defendant would be engaged in illegal activity. It simply stated that drugs would be in the vehicle when not parked at a certain location. Because it is likely that defendant's use of the vehicle included non-illegal activity, the allegation that defendant would be engaged in illegal activity whenever the vehicle was moving was far too general. Since the tip did not provide sufficiently particular information concerning defendant's future actions, an important basis for forming reasonable suspicion was absent. The officers, therefore, lacked reasonable grounds to believe that the informant possessed reliable information about defendant's alleged illegal activities.
We note that the police were not powerless to act on the non-predictive, anonymous tip they received. The officers could have set up more extensive surveillance of defendant until they observed suspicious or unusual behavior. Furthermore, if, after corroborating the readily observable facts, the officers had noticed unusual or suspicious conduct on defendant's part, they would have had reasonable *1271 suspicion to detain him. These circumstances, however, were not present here. In the absence of any suspicious conduct or corroboration of information from which police could conclude that the anonymous informant's allegation of criminal activity was reliable, we must conclude that there was no reasonable suspicion to detain defendant. The trial judge erred in holding otherwise.

Decree
For the reasons assigned, the judgment of the trial judge denying defendant's motion to suppress is reversed. The motion to suppress is granted. Case remanded to the district court for further proceedings.
KNOLL, J., concurs in the result and assigns reasons.
TRAYLOR, J., concurs for the reasons assigned by KNOLL, J.
KNOLL, Justice, concurring.
In suppressing the evidence, the majority's rationale confuses the initial investigatory stop with the further detainment of a defendant for further investigation. In my view, the initial stop was permissible;[1] however, with the quality of information provided by the anonymous tip and the lack of corroboration by the police officers that any illegal activity was taking place, defendant's further detention was tantamount to an illegal arrest. Accordingly, I agree that the evidence should have been suppressed.
Whether a person has been arrested is determined by the totality of the circumstances. State v. Allen, 95-1754 (La. 9/5/96), 682 So.2d 713. An arrest is not defined by the timing of the officer's statement that the defendant is under arrest, and no particular language need be used. State v. Hargrave, 411 So.2d 1058 (La.1982). An arrest takes place when a reasonable person would feel that he was not free to leave. United States v. Mendenhall, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980).
Defendant's passenger testified that he was aware that police officers had been following them since they left Magnolia Street. When the defendant parked, the police pulled up behind him in the driveway. Once defendant was out of the car and asked to identify himself by name, he was read his rights and was told that he was under investigation for narcotics. There is no evidence that the defendant consented to detention thereafter, or that he might have felt free to go. Officer Veit testified that the defendant was not free to leave,[2] although he did not believe that he handcuffed the defendant immediately.[3] In my view, this initial stop was supported by sufficient reliability and predictability to give the officers reasonable suspicion to make an investigatory stop, but not to further detain defendant for further investigation. The level of suspicion necessary to make a stop is "considerably less than proof of wrongdoing by a preponderance of the evidence." U.S. v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). There must be some particularized and objective basis for the officer's suspicion. U.S. v. Cortez, 449 U.S. 411, 415, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). However, the level of objective justification need be only "minimal." U.S. v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989).
In the case sub judice, the officers began to set up their surveillance on the same day they received a call on the AFT Gun Hotline made by a resident of the Magnolia *1272 Housing Development. The caller identified the defendant by first name and as one who sold drugs in the Development. Additionally, the caller described the defendant's physical characteristics, the vehicle, where it was parked, and what activity was to occur when the defendant left with the identified vehicle. I see no significant difference between that information and that in State v. Jernigan, 377 So.2d 1222 (La. 1979), cert. denied, 446 U.S. 958, 100 S.Ct. 2930, 64 L.Ed.2d 816 (1980), or Alabama v. White, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990) where, in each case, an anonymous tip was found to have the indicia of reliability to justify an investigatory stop. In Jernigan, an unidentified caller told the police that a black male wearing a yellow shirt and blue pants was armed and would be sitting at Sander's Bar. In that case, the police officer was justified in conducting a public safety frisk based on the immediate danger presented by the crime allegedly being committed. In White, the anonymous caller described the vehicle, apartment, time of departure, destination, and defendant. Although there may have been greater detail regarding the predictability of the defendant's future actions in White, there was sufficient predictability in the case sub judice insofar as the defendant was known to be selling drugs in the area of his own neighborhood. In White, by contrast to this case, the further detention resulting in search of the vehicle was based on that defendant's consent to the search.
The exception to probable cause that permits an investigatory stop is narrowly drawn to represent the balance between the intrusion on the defendant's Forth Amendment rights and governmental interests in disrupting the flow of drugs. U.S. v. Place, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983). Nevertheless, the rule must not be so rigid that if fails to permit authorities to "graduate their responses to the demand of any particular situation." U.S. v. Sharpe, 470 U.S. 675, 686, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985). Duration of a stop may be a factor. Id. Moreover,
[T]he scope of the detention must be carefully tailored to its underlying justification.
* * * * * *
The scope of the intrusion permitted will vary to some extent with the particular facts and circumstances of each case. This much, however, is clear: an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop.
Florida v. Royer, 460 U.S. 491, 500, 103 S.Ct. 1319, 1325, 75 L.Ed.2d 229 (1983). For that reason, facts related to duration of detention yield varying results. A 90-minute detention was unreasonable where airport officers knew the suspect's time of arrival and therefore should have had a canine narcotic sniff team assembled and waiting. U.S. v. Place, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983). In U.S. v. Sharpe, 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985), a 20-minute detention to await a DEA agent was reasonable where the roads were rural and the police officers themselves had witnessed suspicious activity in a known drug-trafficking area.
Once an investigatory stop is made, officers may gain additional information that may justify further detention. For example, officers stopped defendant for exceeding the speed limit. When the officer noted the extreme nervousness of the driver, he asked further questions regarding his activities. Based on the conflicting stories of the driver and passenger coupled with their extreme nervousness, the officer asked, and was refused, consent to search the vehicle. While defendants were told they were free to go, the vehicle was detained for fifteen minutes awaiting a canine unit. State v. Burton, K93-828 (La.App. 3 Cir. 2/23/94), 640 So.2d 342, writ denied, 94-0617 (La. 4/7/94), 641 So.2d 203. In Burton, further detention was justifiable based on increased information learned after the initial stop. Other cases may ripen into probable cause based on, for example, a plain view exception (E.g. State v. Dixon, 337 So.2d 1165 (La. 1976)), firearm safety (E.g., Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972)), or officer's detection of marijuana odor (Sharpe, supra).
*1273 The majority opinion tends to confuse this important distinction between the information needed to make an initial stop with the quality of information necessary to further detain. Only minimal information is needed for an initial stop. Sokolow, supra. The rationale of the majority opinion pertains to the greater detail and predictability requisite for further detention rather than for the initial investigation.
For these reasons, I respectfully concur.
NOTES
[*] Calogero, C.J., not on panel. Rule IV, Part 2, § 3.
[1] The trial judge held two separate hearings on defendant's motion to suppress. Officer Raymond Veit testified at the first hearing. Subsequently, the trial judge allowed a second hearing to give defendant an opportunity to present witnesses on his behalf. Crystal Morgan and Shaun Joseph testified. At the end of the second hearing, the trial judge again denied the motion to suppress.
[2] Police did not verify the name of the woman leaving the building, the precise apartment from which she left, or her involvement in criminal activity.
[1] In his closing argument at the July 8, 1997 hearing, the defense attorney conceded that "we agree that they may have had reasonable suspicion."
[2] The following exchanges took place between the defense attorney and Officer Veit at the March 10, 1997 hearing.

Q: Was [the defendant] free to leave at that point?
A: No, not at that point.
R. at 71. Officer Veit had just approached defendant, advised him that he was under investigation for narcotics, read the defendant his Miranda rights, and was waiting for the dog to arrive.
Q: So based on the call you were going to stop him and hold him until the dogs got out there?
A: Correct.
R. at 73.
[3] As point of interest, the attorney for the State, in his closing argument at the July 8, 1997 hearing, stated: "The police officer pull[ed] him out of the car, and handcuff[ed] him." R. at 106.