770 So.2d 7 (2000)
STATE of Louisiana
v.
Robert YOUNG.
No. 99-KA-2120.
Court of Appeal of Louisiana, Fourth Circuit.
September 6, 2000.
*8 Harry F. Connick, District Attorney of Orleans Parish, Cate L. Bartholomew, Assistant District Attorney of Orleans Parish, Juliet Clark, Assistant District Attorney of Orleans Parish, New Orleans, Louisiana, Counsel for Plaintiff/Appellee.
Christopher J. Baumann, Student Attorney, Hans P. Sinha, Supervising Attorney, New Orleans, Louisiana, Counsel for Defendant/Appellant.
Court composed of Judge STEVE R. PLOTKIN, Judge PATRICIA RIVET MURRAY, and Judge Pro Tem. PATRICK M. SCHOTT.
MURRAY, J.
Robert Young appeals his conviction for possession with intent to distribute cocaine, a violation of La. R.S. 40:967 A(1), and his adjudication and sentence of life imprisonment as a multiple offender under La. R.S. 15:529.1 A(1)(b)(ii). We reverse the conviction and remand for the reasons that follow.

FACTS AND PROCEEDINGS BELOW
The following facts are established by the testimony presented at the hearing on Mr. Young's motion to suppress the evidence as well as at trial:
At approximately 11:30 p.m. on Saturday, June 7, 1997, New Orleans Police Officer Jay Schnapp at the Sixth District police station received a phone call from an informant. After ending the two-to-threeminute conversation, Officer Schnapp asked Sergeant James Keen and Detective David Gaines to assist him in investigating the tip provided by his informant: Drugs were being sold in a housing project courtyard in the 3700 block of Thalia Street by a black male riding a bicycle, who was "wearing baggy blue jeans with a camouflage bandanna hanging out the side of his pants."
Upon arrival at the designated location, Sgt. Keen stopped the unmarked police car so that the headlights were shining into the courtyard, which was also illuminated by outdoor lights on the buildings. The officers saw Mr. Young, who was dressed as described by the informant, straddling a bicycle as he talked to two other men. A woman was about thirty feet away, walking towards Mr. Young and his companions, but no one else was in the courtyard. *9 The woman "backed off" when she recognized those approaching as police officers.
None of the men moved or tried to flee as the three policemen approached, but Mr. Young told them something to the effect that, "The guys you're looking for went that way," pointing towards Galvez Street. The officers ignored this and instead immediately patted all three down "for officer safety." As Sgt. Keen frisked Mr. Young's pockets he felt a "large billowy object that was consistent with the packaging of narcotics." Upon retrieval, it was found to be a large plastic bag that contained eighty individually wrapped packages of cocaine, so Mr. Young was arrested. Sgt. Keen also seized a bandanna hanging from Mr. Young's pocket as well as $250 consisting of seven ten-dollar bills and nine twenty-dollar bills. Although no contraband was found on Mr. Young's two companions, they were also arrested because the policemen believed "they were acting in conjunction with the defendant, Mr. Young, in the sale of narcotics."
At the hearing on Mr. Young's motion to suppress the evidence. Sgt. Keen testified that he had never used the informant who had provided the tip in this case, and thus could not answer questions about prior reliability or whether the informant was compensated. Sgt. Keen explained that as commanding officer, "it's my understanding that [Officer Schnapp] has used information from this specific informant," because "I'm around these guys who work for me, the officers who work for me. And I don't really recall any specifics. It's just a feeling that I have right now." Sgt. Keen emphasized, however, that Mr. Young was found in the exact location given by the informant, on a bicycle, and wearing the clothing described in the tip.
After the defense completed cross examination of Sgt. Keen, the court asked the State whether further testimony would be offered. The State replied that the matter was submitted. The trial court denied Mr. Young's motion to suppress, and he was brought to trial two months later. In addition to the testimony summarized above, a criminalist testified that four of the eighty packages seized from Mr. Young testified positive for cocaine. A twelve-member jury found him guilty of possession with intent to distribute cocaine. Mr. Young was subsequently adjudicated a third felony offender and was sentenced "to life in prison without the benefit of pardon, probation, parole or suspension of sentence."

ARGUMENTS AND DISCUSSION

ASSIGNMENT OF ERROR # 1
Mr. Young contends that the trial court erred in denying his motion to suppress the evidence. He argues that because there was no evidence to establish that Officer Schnapp's informant had previously been found trustworthy and/or reliable, the caller can only be viewed as an anonymous tipster for purposes of judicial review. Considered in this light, Mr. Young asserts that the mere description of his clothing and his location was insufficient justification for his initial detention because there was no predictive information suggesting the tipster had inside knowledge of any criminal activity. Therefore, based upon Florida v. J.L., 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000), and State v. Robertson, 97-2960 (La.10/20/98), 721 So.2d 1268, Mr. Young maintains that the officers lacked reasonable suspicion to detain him, and the evidence seized as a result of the illegal search should have been suppressed.
The State counters that in Florida v. J.L., 529 U.S. at ___, 120 S.Ct. at 1378, the Supreme Court emphasized the distinction between a tip from an anonymous caller and that which is received "from a known informant whose reputation can be assessed and who can be held responsible if her allegations turn out to be fabricated." The State contends that because Officer Schnapp's testimony in this case establishes that he received the tip directly *10 from a known confidential informant, rather than from an anonymous tipster, the information was sufficiently reliable to justify the immediate action by the police. It is further noted that, unlike the youth in J.L., Mr. Young did not stand silently as the officers approached, but instead told them the men they wanted had left. Because the experienced policemen interpreted this statement as a guilty attempt to divert their attention, the State asserts that there was a reasonable basis for an investigatory stop under the totality of the circumstances, as in State v. Huntley, 97-0965 (La.3/13/98), 708 So.2d 1048. Additionally, unlike the vague allegation of intermittent drug dealing noted in State v. Robertson, 97-2960 at p. 5, 721 So.2d at 1270, in this case the police were told that drug sales were being conducted at the time of the call, thus providing a specific time period that necessitated urgency. Therefore, the State maintains that this court must defer to the trial court's determination that the officers were reasonable in suspecting Mr. Young of engaging in illegal activity at the time he was first approached.
If a defendant moves to suppress evidence obtained in a warrantless search, the State has the burden of proving the constitutionality of the seizure. La. Code Crim.Proc. art. 703D. Under both the federal and state constitutions, "a law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions." La. Code Crim.Proc. art. 215.1 A; State v. Robertson, 97-2960 at p. 2, 721 So.2d at 1269. Although reasonable suspicion for an investigatory stop is less than the probable cause needed to make an arrest, the detaining officer must have sufficient articulable facts to justify the intrusion. State v. Mims, 98-2572, p. 4 (La.App. 4th Cir.9/22/99), 752 So.2d 192, 194. A reviewing court must consider the particular facts and circumstances known to the officer in order to assess the reasonableness of the detention under Article 215.1. Id.
While information furnished by a confidential informant may provide an officer with the reasonable suspicion to justify an investigatory stop, "both the credibility of the informant and the reliability of his information must be sufficiently demonstrated" for the purposes of judicial review. State v. Commodore, 418 So.2d 1330, 1332 (La.1982), and cases cited therein. Similarly, although information received from an anonymous source may provide a basis for governmental intrusion, the totality of the circumstances must demonstrate "that the informant had `inside information' or a `special familiarity' with defendant's affairs." State v. Robertson, 97-2960 at p. 5, 721 So.2d at 1270.
In this case, the State failed to present any testimony or evidence pertaining to the past reliability of Officer Schnapp's informant or the basis for the informant's knowledge of Mr. Young's activities. At the hearing on the motion to suppress, Sgt. Keen could only state that he trusted his subordinates in such cases and that it was his understanding that the informant had provided trustworthy information in the past, implying reliability. However, "[a] mere assertion by police that an informant is reliable is insufficient to establish an informant's credibility." State v. Alexander, 92-2179, p. 3 (La.App. 4th Cir.2/11/94), 632 So.2d 853, 855, writ denied, 94-0621 (La.6/24/94), 640 So.2d 1343. Absent any evidence by which to assess the reasonableness of Officer Schnapp's reliance on the source of his information, this court cannot base its determination solely upon his testimony that it was a "confidential informant." Accordingly, we must determine whether, considering the phone call to be an anonymous tip, the officers had knowledge of sufficient facts to reasonably suspect that Mr. Young had engaged or was engaging in criminal activity when they approached him in the courtyard.
*11 It is well-established that an anonymous tip, suitably corroborated, can contain "sufficient indicia of reliability to provide reasonable suspicion to make [an] investigatory stop." Alabama v. White, 496 U.S. 325, 327, 110 S.Ct. 2412, 2414, 110 L.Ed.2d 301 (1990). However, the U.S. Supreme Court has now made it clear that the mere corroboration of an unknown caller's report regarding the physical description and location of an alleged perpetrator is insufficient under this standard. In Florida v. J.L., supra, an anonymous caller told the police "that a young black male standing at a particular bus stop and wearing a plaid shirt was carrying a gun." Upon arrival at that location six minutes later, two officers saw three young men "just hanging out," one of whom, J.L., was wearing a plaid shirt. All three were frisked, and a concealed handgun was found in J.L.'s pocket.
While J.L. contended the search was illegal, the prosecution argued, as the State does here, "that the tip was reliable because its description of the suspect's visible attributes proved accurate: There really was a young black male wearing a plaid shirt at the bus stop." The Supreme Court rejected this argument, however, explaining that such corroboration did not establish the necessary reliability:
An accurate description of a subject's readily observable location and appearance is of course reliable in this limited sense: It will help the police correctly identify the person whom the tipster means to accuse. Such a tip, however, does not show that the tipster has knowledge of concealed criminal activity. The reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person.
Florida v. J.L., 529 U.S. at ___, 120 S.Ct. at 1379 (emphasis added). The Court further explained that despite the "extraordinary dangers" presented when the tip includes an allegation of an illegal firearm, there could be no lesser standard of "presearch reliability testing" in such cases. Id.
Although the State emphasizes that the informant in the instant case provided the police with greater detail than was available to the officers in J.L., these details provided no additional support to a determination that the allegation of drug dealing was reliable. Instead, the easily observable information regarding Mr. Young's clothing and his bicycle merely allowed the police to quickly pinpoint which individual was the target of the accusation. Similarly, while the State asserts that the caller's allegation of current, ongoing drug activity in this case constituted an additional predictive element of the tip and necessitated urgent action, this "time factor" is indistinguishable from the tipster's report in J.L. that the defendant would be found to have a handgun in his possession. Therefore, despite the officers' visual corroboration of the informant's tip in the instant case, that information alone, as in J.L., was insufficient to support an investigatory stop.
Nor do we agree with the State's contention that as in State v. Huntley, the detention and search of the three men was warranted under Article 215.1 because Mr. Young told the approaching police that they should look elsewhere for their suspects. Unlike the men approached in Huntley, Mr. Young and his friends made no attempt to flee when they saw the police pull up, nor did they make threatening or suspicious gestures. Although Mr. Young was in a housing project courtyard, there was no testimony in this case, as there was in Huntley, that the location was a high-crime area or otherwise known for drug activities. Furthermore, the testifying officers expressly denied any prior encounters with Mr. Young, and there was no indication that any of the three men were known to have a violent or criminal background until after they were searched and arrested. Absent evidence of further articulable, objective knowledge by the police, *12 the circumstances presented here are insufficient to meet the constitutional standard for an investigatory stop set forth in Florida v. J.L Therefore, the trial court's finding that the search and seizure was justified by reasonable suspicion was in error, and Mr. Young's motion to suppress the evidence should have been granted.

CONCLUSION
For the reasons assigned, the physical evidence obtained in the pat-down of Mr. Young was illegally seized and should not have been admissible at trial. Accordingly, we pretermit discussion of the remaining assignments of error and reverse Mr. Young's conviction as well as the judgment denying his motion to suppress the evidence. The case is remanded to the trial court for further proceedings consistent with this opinion.
REVERSED AND REMANDED
PLOTKIN, J., CONCURS WITH WRITTEN REASONS.
PLOTKIN, J., concurring with written reasons.
I agree with the majority that the motion to suppress should have been granted because the evidence against the defendant was illegally seized and inadmissible at trial.
I would also reverse and remand this conviction for a new trial on the additional ground, that the trial court should have granted the defendant a mistrial, after the state improperly commented on the defendant's decision not to present any evidence.
La. C.Cr.P. art. 770(3) provides that the trial court "shall" declare a mistrial when the prosecutor "refers to the failure of the defendant to testify in his own defense." The statute prohibits both "direct" and "indirect" references to the defendant's failure to take the stand. A mistrial must be declared when a prosecutor makes "direct" reference to the facts, notwithstanding the fact that the prosecutor intended for the jury to draw unfavorable inferences from defendant's silence. State v. Fullilove, 389 So.2d 1282 (La.1980). Likewise, a mistrial should be declared when a prosecutor makes "indirect" reference to the facts and when the court determines that the prosecutor's intended effect on the jury was to establish defendant's failure to testify. Where the defendant is the only witness who can rebut the evidence, "a reference to the testimony is uncontroverted focuses the jury's attention on the defendant's failure to testify" and mandates a mistrial. See id.
In the present case, the prosecutor drew attention to the origins of the $250 found inside defendant's pocket and questioned the fact that the defendant's employer failed to testify at trial. The prosecutor's statements implied to the jury that exculpatory evidence from his employer would have been available, if the defendant had been employed. Here, the prosecutor's statements indirectly drew the jury's attention to the defendant's failure to testify. The prosecutor's references to the unrebutted character of the State's evidence was clearly a comment upon the failure of the defendant to testify in his own defense, as the record does not indicate that the defendant is or was employed at the time of the incident. Furthermore, it is obvious that the only person who could have contradicted the statements issued by the prosecutor was the defendant himself. Therefore, since the defendant was the only witness who could have rebutted the evidence, the reference to the testimony as uncontroverted focused the jury's attention on the defendant's failure to testify and mandates a mistrial.
In addition, the harmless error doctrine under Art. 770(3) does not apply in this case. Here, the evidence of defendant's guilt is not overwhelming; therefore, it is impossible to conclude that the prosecutor's improper reference to the defendant's failure to provide testimonial evidence *13 from an employer, was harmless beyond a reasonable doubt.