11PLOTKIN, Judge.
Robert Derouen was convicted of possession with intent to distribute marijuana and was sentenced to serve twelve years at hard labor. On appeal the defendant asserts two assignments of error. We reverse for the reasons that follow.

STATEMENT OF THE CASE

On June 9, 1999 the State filed a bill of information charging the defendant-appellant Robert Derouen with one count of possession of marijuana with the intent to distribute, a violation of La. R.S. 40:966(A). The defendant entered a plea of not guilty on June 22, 1999. On August 3, 1999 the trial court denied the defendant’s motion to suppress. The defendant filed a supervisory writ from this ruling, which this Court denied due to the fact that the defendant had an adequate remedy on appeal.[1] On April 12, 2000, the defendant appeared, withdrew his former plea of not guilty, and entered a plea of guilty as charged reserving his right to appeal from the adverse pretrial rulings on the motions to suppress.[2] The defendant waived delays for sentencing and was sentenced to serve twelve years at hard labor. The trial court granted the defendant’s request that execution of the [2sentence be deferred for one week. On April 18, 2000, the trial court granted a thirty day extension for execution of the sentence.
The defendant filed this appeal and assignments of error on April 14, 2000, seeking relief from the denial of the motion to suppress evidence. Alternatively, the defendant contends that the sentence imposed by the trial judge constituted cruel and unusual punishment.

STATEMENT OF THE FACTS

On March 4, 1999, Deputy Chad Clark received a tip on the DOPE Hotline concerning the defendant, Robert Derouen, which alleged that he was trafficking in pounds of marijuana throughout St. Bernard and Jefferson Parishes and had been for years. The deputies ran Derouen’s name through the police computer and discovered that he had been arrested many times on various charges. The only prior conviction the defendant had was for a crime involving marijuana in 1977. Deputy Clark spoke with Sergeant Lauga, who stated that he had received a tip from a confidential informant that Derouen, residing at the same address noted in the hotline tip, was selling marijuana in St. Bernard Parish. The informant told Sergeant Lauga that Derouen kept his drugs in a freezer in a rear shed at his residence. Deputy Clark, who testified at the suppression hearing, admitted that Sergeant Lauga had received the confidential informant’s tip a year earlier and that an investigation at that time had not shown any illegal activity. Deputy Clark clarified that he personally had received new information about the defendant keeping drugs in the freezer.
That evening, deputies went to Der-ouen’s residence at 312 E. St. Jean Baptist Street in Chalmette. They noticed a shed sitting behind the main house, and they also noticed that the lighting on the outside of the residence and the shed |3was wired so that the lights would go on as someone approached the fence around the residence. The deputies watched the house for approximately an hour until Der- *90 ouen left the residence, got into a pickup truck, and drove away. The deputies followed Derouen to a Texaco station in St. Bernard, where Derouen left the truck, went inside the station/convenience store, and remained there for approximately ten minutes. Derouen then left the station, got back into his truck, and drove to a school parking lot. The deputies followed and watched as Derouen sat in his car in the parking lot with the truck’s lights off. After sitting there for a period of time, Derouen drove from the parking lot to a house at 527 Center Street. There, he left the truck running, went to the back of the residence, remained a few minutes, and then got back in his truck and drove from the house.
The deputies then stopped Derouen, advised him of his rights, and informed him that he was under investigation for possible narcotics dealing. As Derouen got out of his vehicle, the deputies detected a strong odor of marijuana emanating from the truck. Derouen told them: “All I do is smoke a little weed.” When asked if there was any marijuana in his truck, Derouen handed the deputies a cigarette pack. The deputies searched the pack and found no contraband, and Derouen stated he thought his marijuana was in there. The deputies presented Derouen with a form to consent to the search of his truck and his residence, which Derouen signed. The deputies searched the truck and found no drugs.
The deputies then accompanied Derouen to his residence. Derouen led the deputies to his bedroom where he turned over one partially-burned marijuana cigarette. The deputies also found a gun on the side of the bed. Derouen denied that there was any other contraband in the house. The deputies searched a refrigerator in the kitchen of the residence and found two large clear plastic bags [ containing approximately two pounds of marijuana. The deputies then searched the shed behind the residence. Inside, they found five large bags containing three and a half to four pounds of marijuana. The deputies also found a triple beam scale, rolling papers, and loose marijuana. There was also a locked safe in the shed, which Derouen told the deputies contained approximately $100,000. The deputies obtained the combination to the safe, opened it, and seized approximately $123,000.
The deputies took Derouen to the police station, where he indicated that he wanted to cooperate with the deputies. The deputies again advised him of his rights. Der-ouen stated he had gone to the Center Street house, which he owned, to check on it because it had recently been the scene of a fire. Derouen also stated he had approximately eight pounds of marijuana in his residence which he had obtained in Jefferson Parish over a period of time for his own personal use. He admitted he had sold a small amount of marijuana to a friend, but he insisted he had stockpiled the marijuana so that he would not have to buy it when he grew older.

ERRORS PATENT

A review of the record reveals one error patent regarding the sentence, however because we reverse the decision of the trial court this issue is moot.

DISCUSSION

ASSIGNMENT OF ERROR NUMBER 1

It his first assignment of error, the appellant contends that the evidence should have been suppressed because it was the product of an illegal stop by the deputies.
In State v. Sneed, 95-2326, p. 3 (La.App. 4 Cir. 9/11/96), 680 So.2d 1237, 1238, this Court discussed the standard for determining if officers have reasonable suspicion to support an investigatory stop:
*91 An individual may be stopped and questioned by police if the officer has a reasonable suspicion that the person “is committing, has committed, or is about to commit an offense.” La.Code Crim. Proc. Ann. art. 215.1. While “reasonable suspicion” is something less than the probable cause needed for arrest, it must be based upon particular articula-ble facts and circumstances known to the officer at the time the individual is approached. State v. Smith, 94-1502, p. 4 (La.App. 4th Cir.1/19/95), 649 So.2d 1078, 1082. The officer’s past experience, training and common sense may be considered in determining if the inferences drawn from the facts presented were reasonable. State v. Jackson, 26,-138, p. 5 (La.App. 2nd Cir. 8/17/94), 641 So.2d 1081, 1084.
The appellant here argues that there was insufficient corroboration of the tips from the two informants to give the deputies reasonable suspicion of criminal activity on his part to support the investigatory stop. We agree. In State v. Robertson, 97-2960 (La.10/20/98), 721 So.2d 1268, the Louisiana Supreme Court considered the level of corroboration needed to support an investigatory stop based upon an anonymous tip. Applying the totality of the circumstances test articulated by the United States Supreme Court in Alabama v. White, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990), the court reversed the denial of the motion to suppress, stating:
Although reasonable suspicion is a less demanding standard than probable cause, “the content of information possessed by police and its degree of reliability” remain significant factors in the analysis. Id. at 330[, 110 S.Ct. 2412].... Of particular significance to the Court [in White ] was the informant’s prediction of White’s “future behavior.” ... Emphasizing the insider quality of predictive information, the Court concluded that verification of the “innocent” aspects of the anonymous tip gave police reason to believe that the allegations of criminal activity were probably true as well.
Against this legal landscape, we must determine whether the anonymous tip, together with subsequent | ^corroboration by police officers, provided reasonable suspicion for the investigatory detention of the defendant. As noted above, in assessing reasonable suspicion for a stop pursuant to an anonymous tip, the White court stressed corroboration and pre-dictiveness. In the instant case, it is true that the officers were able to corroborate certain aspects of the anonymous tip, including defendant’s name, his physical description and the location of the described vehicle.... Since the* tip did not provide sufficiently particular information concerning defendant’s future actions, an important basis for forming reasonable suspicion was absent. The officers, therefore, lacked reasonable grounds to believe that the informant possessed reliable information about defendant’s alleged illegal activities. [Emphasis in original.]
Robertson, at 3-5, 721 So.2d at 1270. The court further noted, however, that the result could have been different:
We note that the police were not powerless to act on the non-predictive, anonymous tip they received. The officers could have set up more extensive surveillance of defendant until they observed suspicious or unusual behavior. Furthermore, if, after corroborating readily observable facts, the officers had noticed unusual or suspicious conduct on defendant’s part, they would have had reasonable suspicion to detain him.... In the absence of any suspicious conduct or corroboration of information from which police could conclude that the anonymous informant’s allegation of *92 criminal activity was reliable, we must conclude that there was no reasonable suspicion to detain defendant.
Robertson, at 5-6, 721 So.2d at 1270-71.
The issue of a stop based on an anonymous tip was discussed recently by this Court in State v. Boson, 99-1984 (La.App. 4 Cir. 1/17/01), 778 So.2d 687[3], in which the police officers, acting on anonymous complaints of drug-trafficking at a motel on Chef Highway involving a white Ford LTD that had been at that location and two black males who were allegedly dealing narcotics from the hotel, arrived |7at the motel and immediately stopped two men who were entering the described vehicle. A frisk resulted in a search of the defendant’s pockets after the officer frisking him felt a wad of money. In reversing the defendant’s conviction after concluding that the officers lacked sufficient grounds for the stop of the defendant, this Court reviewed the recent jurisprudence on this issue:
Recently, the U.S. Supreme Court revisited the issue [of an anonymous tip]. Florida v. J.L., 529 U.S. 266, 120 S.Ct. 1375 146 L.Ed.2d 254 (2000). In J.L., an anonymous caller reported that a young black male wearing a plaid shirt was standing at a particular bus stop carrying a gun. Officers arrived and saw three black males at the bus stop. The defendant was wearing a plaid shirt. The officers did not see a firearm, and the defendant made no threatening or unusual movements. One officer approached the defendant, told him to put his hands on top of the bus stop, frisked him, and seized a gun. The Court specifically held that when an anonymous caller provides no predictive information and therefore leaves the police with no means to test the informant’s knowledge or credibility, reasonable suspicion is not established.
This case is virtually indistinguishable from Young. [State v. Young, 99-2120 (La.App. 4 Cir. 9/6/00), 770 So.2d 7]. The officers admitted they were provided with little information from the sergeant. There was no testimony at all about the source of the information. The informant therefore must be assumed by this court to have been unknown and untested. The officers went to the scene with the vague knowledge that drugs were being sold at some undetermined time, and that two black men who had a white LTD were involved in the transactions. They immediately stopped Boson and Smith upon seeing them. [Footnote omitted.] The defendants were not performing any suspicious activity at the time they were stopped.
State v. Boson, pp. 8-10 (La.App. 4 Cir. 1/17/01), 778 So.2d at 692-694.
In the instant case, the deputies received an anonymous tip which provided no predictive information as to the defendant’s movements. However, the deputies did not stop the defendant as soon as they encountered him — ’they followed him to three different locations. The deputies stated that the defendant’s general pattern of movement was consistent with drug trafficking. Also, the deputies had been able to confirm that the defendant had a prior criminal record as well as having |sbeen the subject of a prior, albeit ultimately uncorroborated, tip a year earlier. However, the United States Supreme Court, in Florida v. J.L., supra, clearly reaffirmed that an anonymous tip without predictive information or corroborative observations of suspicious activity is not sufficient to justify an investigatory stop. We find that the actions of the defendant were *93 not suspicious and did not corroborate the anonymous tip the deputies had received. The deputies merely saw the defendant leave his house and make three stops — ■ none of which was noted to be a location for narcotics activity. Furthermore, the deputies never saw the defendant meet with anyone else or engage in anything resembling a drug transaction. Therefore, we conclude that there was no reasonable suspicion justifying the stop and thus the trial court erred by denying defendant’s motion to suppress the evidence.
For these reasons we find that this assignment of error has merit. We reverse the decision of the lower court and remand the case for a new trial.

ASSIGNMENT OF ERROR NUMBER 2

In his second assignment of error, the appellant contends that the trial court imposed an excessive sentence. However, because we reverse the judgment below, we do not reach this question. CONCLUSION
For the abovementioned reasons, we reverse the decision of the trial court and remand the case for a new trial.

REVERSED AND REMANDED.

. State v. Robert Derouen, 99-2506, unpub., (La.App. 4 Cir. 10/27/99), writ denied 99-3310 (La. 1/28/00), 753 So.2d 837.

. State v. Crosby, 338 So.2d 584 (La.1976).

. The State has applied for writs, docket num-her 2001-K-0430, in Boson.