# STATE OF LOUISIANA

## COURT OF APPEAL

### FIRST CIRCUIT

*JEW*

*ZW*

### NO. 2023 KJ 0734

## STATE OF LOUISIANA IN THE INTEREST OF K.B.J.

Judgment Rendered: __**JAN 1 9 2024**__

\* \* \* \* \*

Appealed from
The Juvenile Court
Parish of East Baton Rouge, State of Louisiana
No. 117856

The Honorable Curtis A. Calloway, Judge *Ad Hoc* Presiding[1]

\* \* \* \* \*

| | |
|---|---|
| Hillar C. Moore, III<br>District Attorney<br>Prisca Zeigler<br>Assistant District Attorney<br>Baton Rouge, Louisiana | Attorneys for the State of Louisiana |
| | |
| Lakita Leonard<br>Baton Rouge, Louisiana | Attorney for Appellant,<br>K.B.J. |

\* \* \* \* \*

BEFORE: WELCH, HOLDRIDGE,[2] AND WOLFE, JJ.

---

[1]   Judge Calloway presided over the motion to suppress and adjudication hearings. Judge Adam J. Haney presided over the disposition hearing.

[2]   The Honorable Guy Holdridge, retired, is serving as judge *pro tempore* by special appointment of the Louisiana Supreme Court.

 *Holdridge J. dissents w/ reasons*

**WOLFE, J.,**

The juvenile, K.B.J.,[3] was alleged delinquent by petition in juvenile court based on one count of illegal use of weapons or dangerous instrumentalities (count one), a violation of La. R.S. 14:94, and one count of illegal possession of a handgun by a juvenile (count two), a violation of La. R.S. 14:95.8. K.B.J. was fifteen years old at the time of the alleged offenses. He filed a motion to suppress physical evidence, which was denied. Following an adjudication hearing, the juvenile court adjudicated K.B.J. not delinquent on count one and delinquent on count two. The juvenile court imposed a disposition of commitment to the Department of Public Safety and Corrections, Office of Juvenile Justice, for six months, suspended, and twelve months supervised probation. K.B.J. now appeals, assigning error to the juvenile court's denial of his motion to suppress. For the following reasons, we affirm the juvenile's adjudication and disposition.

## STATEMENT OF FACTS

On January 25, 2023, at 3:53 p.m., an anonymous caller reported to the Baker Police Department that they heard gunshots fired near an apartment complex on Jefferson Street in Baker, Louisiana. The caller stated that two black male juveniles wearing backpacks, one of whom was wearing camouflage, were seen leaving the area. Minutes later, Lieutenant Bryan Holiday, an undercover officer in the area, observed two black juvenile males wearing backpacks walking down Jefferson Street. Using the dispatch radio, Lieutenant Holiday informed other officers that one juvenile, K.B.J., was wearing a white hoodie, and the other juvenile was wearing a black hoodie. Suspecting that they were the juveniles described in the call, Lieutenant Holiday advised Officer Brian Thomas, a uniformed patrol officer, of their location.

---

[3] The initials of the juvenile involved in this matter will be used instead of his name to ensure his confidentiality. See La. Ch. Code art. 412; Uniform Rules of Louisiana Courts of Appeal, Rule 5-2.

2

Upon arriving on Jefferson Street, Officer Thomas observed the two juveniles described by Lieutenant Holiday and conducted an investigatory stop. Officer Thomas then patted down K.B.J., whereupon he located a firearm concealed inside of K.B.J.'s pants. The juveniles were advised of their **Miranda**[4] rights and transported to the police station.

## MOTION TO SUPPRESS

In his sole assignment of error, K.B.J. argues that the juvenile court abused its discretion in denying his motion to suppress evidence. Specifically, K.B.J. contends that the juvenile court erroneously allocated the burden of proof in contravention of La. Code Crim. P. art. 703(D), and that the firearm warranted suppression because it was illegally seized.

The Fourth Amendment to the United States Constitution and Article I, § 5, of the Louisiana Constitution protect people against unreasonable searches and seizures. Subject only to a few well-established exceptions, a search or seizure conducted without a warrant issued upon probable cause is constitutionally prohibited. **State v. Baker**, 2020-1253 (La. App. 1st Cir. 11/1/21), 332 So.3d 692, 695. A juvenile may move to suppress any evidence on the ground that it was unconstitutionally obtained. See La. Ch. Code art. 872; La. Code Crim. P. art. 703(A). Once the juvenile makes an initial showing that a warrantless search or seizure occurred, the burden of proof shifts to the State to affirmatively show it was justified under one of the narrow exceptions to the rule requiring a search warrant. See La. Code Crim. P. art. 703(D); **State v. Cyprian**, 2021-0287 (La. App. 1st Cir. 12/22/21), 340 So.3d 271, 281.

---

[4]   Prior to any questioning, the person must be warned that he has the right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly, and intelligently. **Miranda v. Arizona**, 384 U.S. 436, 444-45, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966).

A trial court's ruling on a motion to suppress evidence is entitled to great weight because the trial court had the opportunity to observe the witnesses and weigh the credibility of their testimony. A trial court's legal findings, however, are subject to a *de novo* standard of review. **State v. Landor**, 2020-0336 (La. App. 1st Cir. 2/19/21), 318 So.3d 225, 228. In determining whether the ruling on the defendant's motion to suppress was correct, we are not limited to the evidence adduced at the hearing on the motion and may consider all pertinent evidence given at the trial of the case. **Id.** Therefore, even assuming, *arguendo*, that the trial court erroneously allocated the burden of proof to K.B.J., this error was immaterial where thorough appellate review of the record clearly establishes the reasonableness and thus the constitutionality of Officer Thomas's initial stop and subsequent search of K.B.J.

The right of law enforcement officers to stop and interrogate one reasonably suspected of criminal conduct is recognized by La. Code Crim. P. art. 215.1, as well as both federal and state jurisprudence. See **Terry v. Ohio**, 392 U.S. 1, 30-31, 88 S.Ct. 1868, 1884-85, 20 L.Ed.2d 889 (1968);[5] **Cyprian**, 340 So.3d at 281-82. A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions. La. Code Crim. P. art. 215.1(A); **State v. Hicks**, 2022-0085 (La. App. 1st Cir. 9/16/22), 2022 WL 4286557, *3 (unpublished). Reasonable suspicion for an investigatory stop is something less than probable cause[6] and must be determined under the specific facts

---

[5]  Pursuant to the Fourth Amendment, a police officer who lacks probable cause but whose observations lead him reasonably to suspect that a particular person has committed, is committing, or is about to commit a crime, may detain that person briefly in order to investigate the circumstances that provoke suspicion. The stop and inquiry must be reasonably related in scope to the justification for their initiation. **Terry**, 392 U.S. at 30-31, 88 S.Ct. at 1884-85.

[6]  Probable cause is defined as "reasonable grounds for belief, supported by less than *prima facie* proof but more than mere suspicion." **State v. Warren**, 2005-2248 (La. 2/22/07), 949 So.2d 1215, 1224. "Probable cause to arrest exists when the facts and circumstances within an officer's knowledge, and of which he has reasonable and trustworthy information, are sufficient to justify a person of average caution in the belief that the accused has committed an offense." **State v. Wells**, 2008-2262 (La. 7/6/10), 45 So.3d 577, 582-83.

4

of each case by whether the officer had sufficient knowledge of particular facts and circumstances to justify the infringement on the individual's right to be free from governmental interference. **State v. Thompson**, 2002-0333 (La. 4/9/03), 842 So.2d 330, 335; **Hicks**, 2022 WL 4286557 at *3.

Further, if the law enforcement officer reasonably suspects the person possesses a dangerous weapon, he may search the person. La. Code Crim. P. art. 215.1(B). It is not necessary for an investigating officer to establish that a detained individual was more probably than not armed and dangerous in order to justify a pat-down for weapons. Rather, it is sufficient if the officer establishes a substantial possibility of danger by pointing to particular facts that support such a reasonable inference. **State v. Young**, 2020-0412 (La. App. 1st Cir. 3/18/21), 322 So.3d 830, 834, writ denied, 2021-00524 (La. 10/1/21), 324 So.3d 1055. The reasonableness of an officer's suspicion must be measured by what the officer knew before conducting the search. See **Florida v. J.L.**, 529 U.S. 266, 271, 120 S.Ct. 1375, 1379, 146 L.Ed.2d 254 (2000); **State v. McDonald**, 2008-0821 (La. App. 1st Cir. 11/14/08), 2008 WL 4908655, *5 (unpublished), writ denied, 2008-2905 (La. 9/18/09), 17 So.3d 386.

In determining whether reasonable suspicion exists to temporarily detain a person, the totality of the circumstances, "the whole picture," must be considered. The detaining officer must have knowledge of specific, articulable facts which, taken together with rational inferences from those facts, reasonably warrant the stop. **Hicks**, 2022 WL 4286557 at *3. The officer must therefore articulate something more than an inchoate and unparticularized suspicion or hunch. **Young**, 322 So.3d at 834.

In the instant case, the anonymous caller provided a general description of two black male juveniles wearing backpacks, with one wearing camouflage, near an apartment complex on Jefferson Street. After Lieutenant Holiday advised dispatch

5

that he located two juveniles matching the caller's description, Officer Thomas traveled to Jefferson Street, where he immediately observed the two juveniles walking away from the apartment complex. These two juveniles, including K.B.J., were the only people in the area at that time.

Citing **Florida v. J.L.**, K.B.J. contends that Officer Thomas lacked the reasonable suspicion necessary to conduct an investigatory stop. In **J.L.**, an anonymous caller reported that a young black male standing at a bus stop and wearing a plaid shirt was carrying a gun. Acting solely on the anonymous tip, officers went to the bus stop and saw three black males, one of whom was wearing a plaid shirt. Officers approached J.L., frisked him, and seized a gun from his pocket. **J.L.**, 529 U.S. at 268, 120 S.Ct. at 1377. The United States Supreme Court held that the anonymous tip in **J.L.** lacked sufficient indicia of reliability to establish reasonable suspicion for a **Terry** investigatory stop. **J.L.**, 529 U.S. at 270, 120 S.Ct. at 1378; see also **State v. Lewis**, 2018-0924 (La. 10/29/18), 256 So.3d 978, 979 (*per curiam*).

Whether an anonymous tip establishes reasonable suspicion to conduct an investigatory stop is considered under the totality of the circumstances. The sufficiency of an anonymous tip under **Terry** is determined by the reliability of its assertion of illegality and not just its tendency to identify a determinate person. **Cyprian**, 340 So.3d at 284. The anonymous caller's ability to predict the suspect's future behavior goes toward reliability, as it demonstrates inside information and a special familiarity with the suspect's affairs. However, predictive ability is not always necessary; a non-predictive tip coupled with police corroboration or independent observation of suspicious activity can provide the police with the requisite reasonable suspicion to detain a suspect. **Id.**

In the instant matter, we find no error in the trial court's finding that Officer Thomas had the requisite reasonable suspicion to conduct an investigatory stop of

6

K.B.J. and his associate based upon the information provided by the anonymous tip and corroborated by police investigation. The anonymous caller in question indicated that she heard gunshots and witnessed two black male juveniles, wearing backpacks and camo, leaving the area of the apartment complex down Jefferson Street, on foot. Soon thereafter, Officer Thomas witnessed two black male juveniles, both wearing backpacks, walking down Jefferson street, away from the residential area wherein gunshots were reported. While the defendant argues that neither of the juveniles had on camouflage, we note that the record reflects that both young men were wearing hooded sweatshirts, one white and one black, both of which contained some sort of multi-colored graphic which could easily have been mistaken for a camouflage print. Therefore, weighed against all of the other information accurately relayed by the anonymous caller, the apparent lack of camouflage is not dispositive of the caller's reliability.

Moreover, the juvenile's reliance on **J.L.** is misplaced. In **J.L.** the call was made from an unknown location by an unknown caller, and reported only that an individual possessed a gun without explaining how the caller knew this information. **J.L.**, 529 U.S. at 271, 120 S.Ct. at 1379. Conversely, the record of the anonymous call made herein was introduced into evidence and reported that a gun had actually been discharged, the caller heard the gunshot herself, and the call was coming from the very location where the gun was discharged and where a shell casing matching the firearm recovered from K.B.J. was later discovered. Finally, the caller accurately predicted that the individuals who fired the gun would be walking down Jefferson Street, away from the residential apartment complex from which the anonymous tip originated and where the shots were initially fired. As several officers testified, K.B.J. and his friend, both black male juveniles, and both wearing backpacks, were seen leaving the area where gunshots had been fired, mere minutes after the gunshots were reported, and were the only individuals on the street at that time. As such, this

7

case is distinguishable from **J.L.**, and given the totality of the circumstances, Officer Thomas possessed the reasonable suspicion necessary to conduct an investigatory stop of K.B.J.

We likewise find Officer Thomas's subsequent search of K.B.J. was valid. It is not necessary for an investigating officer to establish that a detained person was more probably than not armed and dangerous in order to justify a pat-down for weapons. Rather, it is sufficient if the officer establishes a substantial possibility of danger by pointing to particular facts that support such a reasonable inference. **Young**, 322 So.3d at 834. An individual's nervous, evasive behavior is a pertinent factor in determining whether an officer had reasonable suspicion. **Illinois v. Wardlow**, 528 U.S. 119, 124, 120 S.Ct. 673, 676, 145 L.Ed.2d 570 (2000).

Officer Thomas testified that prior to detaining him, he observed K.B.J. glancing nervously back and forth and acting as though he might flee. Furthermore, the information available to Officer Thomas at the time of the detention suggested that one or both of the individuals was armed with a gun. Moreover, the fact that gunshots were reported indicates that the gun in question was both loaded and operable, as it had recently been discharged. Taking into consideration the totality of the circumstances, including Officer Thomas's reasonable and ultimately substantiated belief that K.B.J. was in possession of a handgun, we cannot say that Officer Thomas's protective frisk for officer safety was improper. Accordingly, the trial court did not err in denying the motion to suppress evidence, and these assignments of error are without merit. See **Young**, 322 So.3d at 835.

**ADJUDICATION AND DISPOSITION AFFIRMED.**

STATE OF LOUISIANA

IN THE INTEREST OF

K.B.J.

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2023 KJ 0734



**Holdridge, J., dissenting.**

I respectfully dissent from the majority's opinion. The Fourth Amendment to the United States Constitution and Article I, § 5, of the Louisiana Constitution protect people against unreasonable searches and seizures. Subject only to a few well-established exceptions, a search or seizure conducted without a warrant issued upon probable cause is constitutionally prohibited. A juvenile may move to suppress any evidence on the ground that it was unconstitutionally obtained. See La. Ch. Code art. 872; La. Code Crim. P. art. 703(A). Once the juvenile makes an initial showing that a warrantless search or seizure occurred, the burden of proof shifts to the State to affirmatively show it was justified under one of the narrow exceptions to the rule requiring a search warrant. See La. Code Crim. P. art. 703(D); **State v. Cyprian**, 2021-0287 (La. App. 1st Cir. 12/22/21), 340 So.3d 271, 281.

At the hearing on the motion to suppress, K.B.J. made an initial showing that a warrantless seizure occurred, thereby meeting his burden of proof under La. Code Crim. P. art. 703(D). Accordingly, the burden of proof then shifted to the State to affirmatively show that the evidence seized was admissible. See La. Code Crim. P. art. 703(D). A thorough review of the record reveals that the State failed to meet its burden of proof that the warrantless search and seizure fell within a well-delineated exception to the warrant requirement, and the juvenile's motion to suppress should have been granted.

The right of law enforcement officers to stop and interrogate one reasonably suspected of criminal conduct is recognized by La. Code Crim. P. art. 215.1, as well as both federal and state jurisprudence. See **Terry v. Ohio**, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); **Cyprian**, 340 So.3d at 281-82. A law enforcement officer may briefly stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions. La. Code Crim. P. art. 215.1(A); **State v. Hicks**, 2022-0085 (La. App. 1st Cir. 9/16/22), 2022 WL 4286557, *3 (unpublished). Reasonable suspicion for an investigatory stop is something less than probable cause[1] and must be determined under the specific facts of each case by whether the officer had sufficient knowledge of particular facts and circumstances to justify the infringement on the individual's right to be free from governmental interference. **State v. Thompson**, 2002-0333 (La. 4/9/03), 842 So.2d 330, 335; **Hicks**, 2022 WL 4286557 at *3.

In determining whether or not reasonable cause exists to temporarily detain a person, the totality of the circumstances, "the whole picture," must be considered. The detaining officer must have knowledge of specific, articulable facts which, taken together with rational inferences from those facts, reasonably warrant the stop. The officer must therefore articulate something more than an inchoate and unparticularized suspicion or hunch. **Hicks**, 2022 WL 4286557 at *3.

When a law enforcement officer has stopped a person for questioning and reasonably suspects he is in danger, he may frisk the outer clothing of the person to feel for a dangerous weapon. Further, if the law enforcement officer reasonably suspects the person possesses a dangerous weapon, he may search the person. La.

---

[1] Probable cause is defined as "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." **State v. Warren**, 2005-2248 (La. 2/22/07), 949 So.2d 1215, 1224. "Probable cause to arrest exists when the facts and circumstances within an officer's knowledge, and of which he has reasonable and trustworthy information, are sufficient to justify a person of average caution in the belief that the accused has committed an offense." **State v. Wells**, 2008-2262 (La. 7/6/10), 45 So.3d 577, 582-83.

Code Crim. P. art. 215.1(B). It is not necessary for an investigating officer to establish that a detained individual was more probably than not armed and dangerous in order to justify a pat-down for weapons. Rather, it is sufficient if the officer establishes a substantial possibility of danger by pointing to particular facts that support such a reasonable inference. **State v. Young**, 2020-0412 (La. App. 1st Cir. 3/18/21), 322 So.3d 830, 834, writ denied, 2021-00524 (La. 10/1/21), 324 So.3d 1055.

According to Officer Thomas, the dispatch call provided a general description of two juvenile males wearing backpacks, with one wearing camouflage, in the area of Jefferson Street. As he drove down Jefferson Street, he observed K.B.J., who was "kind of looking back and forth nervous[ly,]" and another juvenile subject. After Officer Thomas parked his vehicle and activated the lights, he immediately ordered the two juveniles to place their hands on the front of his vehicle. He did not identify himself as an officer, nor did he ask the juveniles for their names or addresses, an explanation for their actions, whether they had contraband, or whether they consented to a search. Although he did not observe anything, firearm or otherwise, in the juveniles' hands, Officer Thomas then conducted a pat-down search of K.B.J. for "officer safety" and subsequently located the firearm concealed in his pants. Officer Thomas testified that he stopped the two juveniles primarily because Lieutenant Holiday had already identified them, and they were leaving the area where gunshots were reported. Finally, Officer Thomas conceded that his body-cam footage showed K.B.J. wearing a white hoodie, not a camouflage hoodie.

At the hearing and on appeal, K.B.J. contends the instant case is similar to **Florida v. J.L.**, 529 U.S. 266, 268-69, 120 S.Ct. 1375, 1377, 146 L.Ed.2d 254 (2000), wherein an anonymous caller reported that a young black male standing at a particular bus stop and wearing a plaid shirt was carrying a gun. Acting solely on

3

the anonymous tip, officers went to the bus stop about six minutes later and saw three black males, one of whom was wearing a plaid shirt. The officers did not see a firearm, and the defendant made no threatening or otherwise unusual movements. Apart from the anonymous tip, officers had no reason to suspect any illegal conduct. Nonetheless, officers approached J.L., frisked him, and seized a gun from his pocket.

The United States Supreme Court held that the anonymous tip in **J.L.** lacked sufficient *indicia of reliability to establish reasonable suspicion for a* **Terry** investigatory stop. Unlike a tip from a known informant whose reputation can be assessed and who can be held responsible if his allegations turn out to be fabricated, "an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity." **J.L.**, 529 U.S. at 270, 120 S.Ct. at 1378 (quoting **Alabama v. White**, 496 U.S. 325, 329, 110 S.Ct. 2412, 2415, 110 L.Ed.2d 301 (1990)). Finally, the fact that the allegation about the gun turned out to be true did not indicate that the officers, prior to the frisks, had a reasonable basis for suspecting J.L. of engaging in unlawful conduct. The court stated:

> An accurate description of a subject's readily observable location and appearance is of course reliable in this limited sense: It will help the police correctly identify the person whom the tipster means to accuse. Such a tip, however, does not show that the tipster has knowledge of concealed criminal activity. The reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person.

**J.L.**, 529 U.S. at 272, 120 S.Ct. at 1379.

In **White**, *an anonymous caller reported that a woman was carrying cocaine* and that she would leave an apartment building at a specified time, get into a particular car, and drive to a named motel. **White**, 496 U.S. at 327, 110 S.Ct. at 2414. The court held that the anonymous tip, as corroborated by police, exhibited sufficient indicia of reliability to justify an investigatory stop of White's car. Although not every detail mentioned in the tip was verified by police prior to the

4

stop, the court concluded that the informant's ability to predict White's future behavior, and police corroboration of significant aspects of the tip, were sufficient to furnish reasonable suspicion for the investigatory stop. Emphasizing the insider quality of predictive information, the court concluded that verification of the "innocent" aspects of the anonymous tip gave police reason to believe that the allegations of criminal activity were probably true as well. **Id.** at 331-32, 110 S.Ct. at 2416-17.

The Louisiana Supreme Court has held that an anonymous tip lacking sufficient indicia of reliability does not provide officers with reasonable suspicion to detain a defendant, even where officers sufficiently corroborate the defendant's identity. See **State v. Lewis**, 2018-0924 (La. 10/29/18), 256 So.3d 978, 979 (*per curiam*); **State v. Robertson**, 97-2960 (La. 10/20/98), 721 So.2d 1268, 1271. In **Robertson**, an anonymous caller reported the defendant's name, appearance, and location of his vehicle when he "wasn't dropping off narcotics." After officers observed the defendant, who matched the caller's description, enter the described vehicle at the described location, they confirmed that he was the person identified in the call. After a canine detected the odor of narcotics, officers searched his vehicle and found crack cocaine. **Robertson**, 721 So.2d at 1268-69. Although officers sufficiently corroborated certain aspects of the tip, the tip failed to provide predictive information for police to sufficiently conclude that the allegation of criminal activity was reliable. Thus, officers did not have reasonable suspicion to detain the defendant. **Id.** at 1270-71.

Based on the foregoing, I would find that the State failed to prove that the stop and frisk of K.B.J. was lawful, and the trial court erred in denying K.B.J.'s motion to suppress evidence. As in **J.L.** and **Robertson**, the anonymous tip herein lacked the sufficient indicia of reliability necessary to provide officers with reasonable suspicion to detain K.B.J. Contrary to the State's argument on appeal,

5

the anonymous caller did not provide any predictive information to test her knowledge or credibility. The caller stated that the juveniles were leaving the area where gunshots were reportedly fired. These are easily obtained facts existing at the time of the tip, not future behaviors that demonstrate a special familiarity with the individual's personal affairs. See **White**, 496 U.S. at 332, 110 S.Ct. at 2417. Moreover, the caller did not state that the juveniles were armed with a gun or responsible for the gunshots fired. Based on the details provided in the tip, it was not reasonable for the officers to believe that the caller had access to reliable information about the juveniles' alleged criminal activity. Accordingly, there was no predictive information regarding future behavior or criminal activity that police could have verified upon arrival to justify an investigative stop.

Moreover, the caller demonstrated that she was less reliable by providing an inaccurate description of the juveniles. Her description – that one of the juveniles was wearing camouflage – was wholly inconsistent with the testimony of four officers, including Officer Thomas, as well as Officer Thomas's body-cam footage, which clearly depicted K.B.J. wearing a white hoodie and the other juvenile wearing a black and yellow hoodie. Although the State acknowledges on appeal that the juveniles were not wearing camouflage, they nevertheless maintain that the juveniles matched the complainant's description because their clothing could have been "easily . . . mistaken, from a distance, as camouflage." While that may have been true for the anonymous caller, officers arriving on Jefferson Street had a closer view of the two juveniles and could have easily determined that neither juvenile was wearing camouflage. Thus, the discrepancy between the caller's description and the officers' personal observations should have alerted officers to the unreliability of the anonymous tip.

Finally, officers did not corroborate the anonymous tip through an independent investigation. Their suspicion that K.B.J. was carrying a weapon

6

arose not from their own personal observations but solely from the anonymous tip. Prior to conducting the pat-down search, the only information that officers possessed was an anonymous report of gunshots fired near the apartment complex on Jefferson Street and two juvenile males wearing backpacks, one of whom was wearing camouflage, seen leaving the area. When Officer Thomas spotted the juveniles, he noticed K.B.J. look around nervously but did not observe a firearm on him. Only after Officer Thomas frisked K.B.J. did he discover a firearm concealed in his pants. Thus, prior to frisking K.B.J., there were no readily observable facts upon which officers could corroborate the information from the anonymous tip.

Rather, because the juveniles were walking away from the apartment complex on Jefferson Street where gunshots were reportedly fired, officers assumed that they were the juveniles described in the anonymous tip. The State on appeal contends that because the juveniles were in the area "as predicted by the caller," officers had reasonable suspicion to stop the juveniles. However, the fact that K.B.J. was in that location was reliable only to the extent that it identified the individuals accused in the anonymous tip. It stopped well short of proof that K.B.J. was engaged in criminal activity. See **J.L.**, 529 U.S. at 272, 120 S.Ct. at 1379. Thus, K.B.J.'s presence on Jefferson Street, combined with the unreliability of the anonymous tip and the lack of corroboration by police, did not provide Officer Thomas with reasonable suspicion to conduct an investigatory stop. See **Lewis**, 256 So.3d at 979; **Robertson**, 721 So.2d at 1271.

Accordingly, I find that the State failed to prove that the investigatory stop of K.B.J. was constitutional. See **State v. Herrington**, 2007-0070 (La. App. 4th Cir. 6/20/07), 961 So.2d 1271, 1277-78, writ denied, 2007-1528 (La. 8/31/07), 962 So.2d 429 (where anonymous tip provided reliable information as to name and description, but provided no predictive information regarding criminal activity, investigatory stop not justified without suspicious activity or corroboration of

7

tipster's information); cf. **State in the Interest of A.J.**, 2013-2108 (La. App. 1st Cir. 3/24/14), 2014 WL 1203210, *4 (unpublished) (after independently observing suspects near backyard of complainant's residence, officers had reasonable suspicion to briefly detain suspects who matched description provided by known complainant).

Moreover, even assuming *arguendo* that the stop was constitutional, the State likewise failed to prove that the frisk of K.B.J. was lawful. When an officer has reasonable suspicion that a person has committed a crime, he may stop the person and ask for their name, address, and an explanation of their actions. La. Code Crim. P. art. 215.1(A); **Terry**, 392 U.S. at 22-23, 88 S.Ct. at 1880-81. Further, if the officer reasonably suspects that he is in danger, he may frisk the person's outer clothing for a dangerous weapon. La. Code Crim. P. art. 215.1(B); **Terry**, 392 U.S. at 28, 88 S.Ct. at 1883.

Officer Thomas's actions were in clear violation of La. Code Crim. P. art. 215.1(A) and **Terry**. As soon as Officer Thomas stepped out of his vehicle, he ordered the juveniles to place their hands on the vehicle and immediately removed K.B.J.'s backpack and patted him down, which led to the discovery of a firearm. Thus, Officer Thomas did not conduct any *investigative inquiry* prior to frisking K.B.J. for weapons. Furthermore, Officer Thomas failed to articulate particularized facts upon which to conclude that there was a substantial possibility that K.B.J. was armed and dangerous prior to frisking him for weapons. Hopefully, the time has long passed that this court considers legal or acceptable, the "normal practice" of police officers conducting pat-down searches upon initially making contact with African American teenagers walking on a public street. See **Florida v. J.L.**, 529 U.S. at 271-74, 120 S.Ct. at 1379-80; **State v. Sims**, 2002-2208 (La. 6/27/03), 851 So.2d 1039, 1045; **State in the Interest of J.H.**, 2011-324 (La. App. 5th Cir. 12/28/11), 83 So.3d 1100, 1106; **State v. Mulder**, 2011-0424 (La. App. 4th Cir.

8

10/19/11), 76 So.3d 1241, 1246; writ denied, 2011-2511 (La. 12/1/11), 76 So.3d 1160. Officer Thomas testified that prior to conducting the pat-down, he categorically did not fear for his safety. According to Officer Thomas, it was a "normal practice" for him to conduct pat-downs when "making contact with anybody in the public[.]" Although he made generalized statements about officer safety and how he noticed a "pattern" with "these subjects[,]" he failed to point to specific facts substantiating the need to pat down K.B.J.

Officer Thomas's reliance on uncorroborated information from the anonymous tip and the fact that K.B.J. was in the general area was woefully insufficient to support a reasonable suspicion that K.B.J. was involved in criminal activity, let alone armed and dangerous. While we agree with the State that firearms are dangerous and pose a serious threat to public safety, "the Fourth Amendment is not so easily satisfied[,]" where **Terry** frisks are conducted on the basis of bare-boned tips about guns. See **J.L.**, 529 U.S. at 272-73, 120 S.Ct. at 1379-80. Acting only on an anonymous tip, Officer Thomas provided no articulable facts giving rise to a reasonable belief that such aggressive tactics were necessary or that such restraint was justified. See **State v. Porche**, 2006-0312 (La. 11/29/06), 943 So.2d 335, 339 (*per curiam*); cf. **State v. Turner**, 2013-0180 (La. 3/1/13), 108 So.3d 753, 755. Had the officer complied with the parameters of Article 215.1, it is entirely feasible that the juvenile would have been able to explain his presence on a public road in a residential area in the middle of the afternoon. Moreover, given that the incident occurred on a Wednesday, shortly after school dismissal, it is also feasible that he could have explained why he was carrying a bookbag. Instead, it is clear from the record that the officer in this case conducted a weapons frisk absent any information beyond what he learned from the anonymous tip, and in direct contravention of the constitutional and statutory protections against illegal search and seizures.

9

Based on the foregoing, I find that the trial court erred as a matter of law in denying the juvenile's motion to suppress the illegal search and seizure conducted in this matter, and I respectfully dissent from the majority's opinion.